**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

LENNY URENA,
    *Defendant-Appellant.*

No. 09-50285

D.C. No.
5:07-cr-00148-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
September 2, 2011—Pasadena, California

Filed October 13, 2011

Before: Mary M. Schroeder and Ronald M. Gould,
Circuit Judges, and Michael Patrick McCuskey,
Chief District Judge.*

Opinion by Judge Gould

---

*The Honorable Michael Patrick McCuskey, Chief District Judge for
the U.S. District Court for Central Illinois, Urbana, sitting by designation.

**COUNSEL**

Elizabeth Newman (argued), Federal Public Defender, Los Angeles, California, for defendant-appellant Lenny Urena.

Harvinder S. Anand (argued), Michael J. Raphael, Assistant U.S. Attorneys, Los Angeles, California, for plaintiff-appellee United States of America.

**OPINION**

GOULD, Circuit Judge:

Lenny Urena appeals his jury conviction for assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3) and possession of contraband in prison (a prison knife or "shank") in violation of 18 U.S.C. §§ 1791(a)(2), (b)(3). First, Urena argues that the district court abused its discretion by refusing to instruct the jury on his theory that he acted in self-defense. Second, Urena claims that the district court violated his Confrontation Clause rights by refusing to allow him to cross-examine the treating physician about the cause of the victim's injuries, and that the district court erred by refusing to let him designate the treating physician as his expert witness on causation during the trial. Finally, Urena further claims that his sentence is substantively unreasonable because his guidelines range sentence included "recency points," which were removed from the guidelines after he was sentenced. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

On the morning of April 11th, 2006, federal prisoner Gary Dennis grabbed fellow inmate Lenny Urena and called him a "bitch." Urena returned the insult and the two separated. Hours later, Urena attacked Dennis by surprise, striking him in the face. Dennis tried to disengage but Urena pursued and struck him repeatedly from behind. Dennis eventually grabbed Urena and wrestled him to the ground. Another inmate, Nekis Atwater, intervened, kicking Dennis in the back of the head and punching him at least fourteen times.

Dennis's injuries were superficial, but he suffered lacerations that required stitches. The shank that caused these injuries was recovered from underneath Urena's shoulder. Eyewitnesses disagree about who had the shank in the fight, Atwater or Urena. Urena confessed that the shank was his and that he had held it during the fight.

At trial, Urena argued that Atwater attacked Dennis with the shank, and that he confessed to possessing it because he did not want to "snitch" on Atwater. He also argued self-defense, claiming he was in danger because Dennis had called him a bitch, which he contends is a serious threat in prison. Alternatively, he argued that Dennis could have had a weapon when Urena attacked him. The district court at first let Urena argue self-defense in his opening statement, but later refused to instruct the jury on self-defense, reasoning that Urena had not established a sufficient factual foundation.

At trial, the Government called Dr. Jaime David—Dennis's treating physician—to testify on the nature and extent of Dennis's injuries. Dr. David's report said that the injury above Dennis's right eye was likely caused by a punch or a fall to the ground, not a knife. The Government moved to preclude Urena from asking Dr. David questions about causation, and the court agreed to do so as long as the Government did not open the door to that line of questioning on direct. The district

court explained that "[t]here is a difference between the nature of a wound and causation," and noted that questions about causation were outside the scope of Dr. David's role as a percipient witness. Urena's subsequent attempt during the trial to designate Dr. David as an expert was rejected by the court.

## II

**[1]** Urena argues that the district court erred by refusing to give a self-defense instruction to the jury. We review for abuse of discretion the district court's conclusion that Urena did not establish a factual foundation to support a jury instruction on self-defense. *United States v. Duran*, 59 F.3d 938, 941 (9th Cir. 1995). To be entitled to a self-defense jury instruction, a defendant must make a prima-facie case of self defense by offering evidence to show:

> (1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and
>
> (2) the use of no more force than was reasonably necessary in the circumstances.

*United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006).

**[2]** Under this rule the privilege of claiming self defense as a justification for an assault is constrained by the need for an immediate threat of unlawful force, and the need for the action to be commensurate with the threat, with no more force used than reasonably necessary to meet it. Urena's primary argument to us is that he "had to attack . . . so that no one would think he really was a bitch." Applying this rule, when a person receives harsh words from another, insulting words, demeaning words, or even fighting words, there is no privilege to assault the speaker with deadly force. Stated another way, a person insulted by a personal slur cannot stab the

offending speaker in the neck, bash their skull with a baseball bat, send a bullet to their heart, or otherwise deploy deadly force in response to the insult.

[3] Urena's being called a bitch in prison, though it might create risk in that harsh environment did not give Urena warrant to attack Dennis with a prison-made knife. Urena's being called a bitch in prison did not justify a surprise, pre-emptive attack using deadly force; indeed it would not have justified an assault using much less force. *See, e.g., United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998) (holding victim's threat to "finish what he started" later that afternoon was not imminent); *United States v. Wagner*, 834 F.2d 1474, 1486 (9th Cir. 1987) (rejecting defendant's self-defense theory when victim was unarmed and in retreat); *United States v. Slocum*, 486 F. Supp. 2d 1104, 1113-14 (C.D. Cal. 2007) (rejecting self-defense theory when victims were unarmed and non-threatening at time of attack).

[4] Urena also contends that he presented evidence that could show Dennis was carrying a shank and therefore he was defending himself against an imminent attack. But even if Dennis possessed a knife, the evidence was undisputed that it was Urena who was the attacker, and thus he could not in those circumstances successfully urge a self defense theory. The district court did not abuse its discretion in concluding that Urena's evidence was mere speculation and that a jury could not rationally sustain the defense based on the evidence presented. *Wagner*, 834 F.2d at 1486.

## III

[5] Urena next contends that the district court erred by preventing him from examining Dr. David about the cause of Dennis's injuries and that this violated his Confrontation Clause rights. Federal Rule of Evidence 611(b) states a clear rule: "Cross examination should be limited to the subject matter of direct examination and matters affecting the credibility

of the witness." We see no error of law, to the extent we review *de novo* on a Confrontation Clause claim, *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007) (en banc), by the district court's limiting cross examination of Dr. David to the scope of his direct testimony.

**[6]** We have held: "A limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness." *United States v. Besimon*, 172 F.3d 1121, 1128 (9th Cir. 1999) (internal citations and quotations omitted). The Government called Dr. David to testify only as to the nature and extent of Dennis's injuries. Urena's Confrontation Clause rights were not violated, as he was allowed to cross-examine Dr. David on these issues, and on matters of bias and motivation.

Urena alternatively argues that the trial court erred 1) by ruling that testimony about causation of the injuries would be expert testimony and 2) by not allowing Urena to designate Dr. David as an expert. We review evidentiary rulings for abuse of discretion, though we review de novo the district court's interpretation of the Federal Rules of Evidence. *United States v. Yida*, 498 F.3d 945, 949 (9th Cir. 2007). Urena argues that the testimony it wanted to elicit from Dr. David was not expert testimony because a doctor's evaluation of an injury is intertwined with his judgment of what caused the injury. He cites no legal authority for this argument, analogizing to the hearsay exception in Federal Rule of Evidence 803(4), which covers statements describing the cause of the injury "insofar as reasonably pertinent to diagnosis or treatment."

**[7]** But other courts have held that a physician's assessment of the cause of an injury is expert testimony. *See, e.g., United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("Her diagnosis of the injury itself . . . would be per-

missible lay testimony, but her statement about the cause of the injury was, as she admitted, a 'hypothesis.' And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." (internal quotation and alteration omitted)); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (holding that, where the cause of an injury would not be obvious to a lay juror, expert testimony is required). We are persuaded, and agree with our sister circuits, that Dr. David's opinion on issues of causation required expert testimony.

**[8]** Urena's argument that he should have been allowed belatedly to designate Dr. David as an expert to testify on the cause of the injuries also lacks merit. Urena could have designated and called his own medical expert, and did designate an expert on prisons. But instead of designating a medical expert before trial, he tried without success to designate Dr. David as his expert once trial had begun. The district court has ample discretion to prevent a party from designating a new expert witness after the trial has started. The district court held a pretrial conference and both the Government and Urena then were free to designate their planned experts. Urena did not at pretrial conference say that he wanted to call Dr. David as an expert or any other medical expert, and then he did not seek to designate Dr. David as his expert until after the trial was underway. There is no abuse of discretion in the district court excluding the proffer of a new expert not disclosed in pretrial conference or pretrial order. The district court has broad traditional powers to manage its docket and to manage the presentation of evidence through designated witnesses in a trial before it. *See, e.g., United States v. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) (en banc) ("[T]he district court here is well within its authority to manage its docket in enforcing a valid pretrial discovery order."). The district court also has unquestioned discretionary power to exclude evidence that should have been produced in reciprocal discovery. *See United States v. Moore*, 208 F. 3d 577, 578 (7th Cir. 2000) ("[C]ourts are entitled to exclude evidence that should

have been produced during reciprocal discovery in criminal cases.") (citing *Taylor v. Illinois*, 484 U.S. 400 (1988)). It follows from these principles that a district court may normally refuse to permit expert testimony from an expert not previously designated before trial in the pretrial conference. We hold that the district court here did not abuse its discretion in declining to permit Urena to add Dr. David as a defense witness on the causation issue during trial.

## IV

**[9]** Finally, Urena argues that his sentence should be vacated and remanded for re-sentencing because the Sentencing Commission has amended the guidelines to eliminate "recency points" from the sentencing calculation. U.S. Guidelines Manual, Supp. to App. C, Amend. 742 at 354-56 (2010) ("Amend. 742"). The guidelines provide that when a change is not designated as retroactive, it is not to have retroactive effect to reduce a prison term. *See* U.S. Guidelines Manual § 1B1.10(a)(2). The change implemented by Amendment 742 is not designated as retroactive. § 1B1.10(c) (not listing Amend. 742).

Under the guidelines in place when Urena was sentenced, the sentencing range was correctly calculated as 77-96 months. If re-calculated under the revised guidelines, his sentencing range would be 63-77 months. Urena was sentenced to only 60 months. He argues that this sentence is substantively unreasonable in light of the Sentencing Commission's revision.

**[10]** We review sentencing decisions for abuse of discretion. *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009). "Only a procedurally erroneous or substantively unreasonable sentence will be set aside." *Id.* at 1053 (quoting *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc)). Urena argues that his sentence is substantively unreasonable in light of Amendment 742 because the

reason for the amendment was that recency points only minimally predict recidivism. *See* Amend. 742. But we have recently held that failure to vary from a guidelines range sentence to compensate for the inclusion of recency points after Amendment 742 had been proposed but before it was adopted does not render a sentence substantively unreasonable. *United States v. Ruiz-Apolonio*, No. 10-50306, ___ F.3d ___, 2011 WL 4060803 at *8-9 (9th Cir. Sept 14, 2011). Urena's sentence, adopted before Amendment 742 was even proposed, is not substantively unreasonable.

The district court is required to apply the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii). Subsequent amendments to the guidelines can only be considered if the amendment is clarifying existing law (a non-substantive change) or listed as retroactive under U.S. Guidelines Manual § 1B1.10(c). *United States v. Morgan*, 376 F.3d 1002, 1010-11 (9th Cir. 2004). Amendment 742 is a substantive change because it was not characterized as a clarification and does not address a circuit conflict. *Id.* It was not listed as a retroactive change, and does not have retroactive effect.

Urena argues in the alternative that we should give the district court a chance to re-evaluate the sentence imposed in light of the amendment. He cites *United States v. Godin*, where the First Circuit vacated a defendant's sentence and remanded for re-sentencing after a non-retroactive amendment changed the way that past convictions are counted for criminal history purposes. 522 F.3d 133, 136 (1st Cir. 2008) (per curiam). Recognizing that this amendment did not alter the guideline range, the First Circuit in *Godin* reasoned that it nonetheless might alter the district court's ultimate choice of sentence, and left it to the district court's discretion whether the sentence should be changed in light of the amendment. *Id.*

We decline to adopt the approach taken by *Godin*. *See also United States v. Alexander*, 553 F.3d 591,593 (7th Cir. 2009)

(criticizing the First Circuit's approach in *Godin* and declining to follow it). Amendment 742 is not listed as retroactive, and the guidelines themselves make clear that such a substantive change in the guidelines, where not listed as retroactive, does not warrant resentencing. U.S. Guidelines Manual § 1B1.10(a)(2). Here, there was an otherwise reasonable sentence arrived at in a procedurally correct way based on a properly calculated guidelines range.

**AFFIRMED.**