FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CESAR GOMEZ,
*Defendant-Appellant*.

No. 12-50018

D.C. No.
3:10-cr-04587-W-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, Senior District Judge, Presiding

Argued and Submitted
July 10, 2013—Pasadena, California

Filed August 6, 2013

Before: Susan P. Graber, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Watford

**SUMMARY**[*]

**Criminal Law**

The panel affirmed a jury conviction of importation of methamphetamine in a case in which the defendant claimed ignorance of the presence of the drugs in his car.

The panel held the district court did not violate *Miranda* by admitting the defendant's post-arrest statement that he feared for his family's safety, where the statement, an explanation for why he refused to talk to the arresting agent, was voluntary and arguably inconsistent with his trial testimony, and where the prosecution used the statement only as impeachment during rebuttal.

The panel rejected the defendant's contention that the district court committed reversible error under Fed. R. Evid. 704(b) and 403, or the Confrontation Clause, by admitting a special agent's expert testimony that drug-trafficking organizations do not use unknowing drug couriers.

The panel held that the prosecutor's statement during closing argument that it was the jury's "duty" to say the defendant is guilty did not amount to error, where that statement came immediately after the prosecutor's statement that the government has the burden of proof beyond a reasonable doubt.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Watford wrote that under *United States v. Bushyhead*, 270 F.3d 905 (9th Cir. 2001), the defendant's statement that he could not speak to officers because his "family will get killed" should have been excluded, even as impeachment evidence.

## COUNSEL

Harini P. Raghupathi, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Kyle W. Hoffman (argued), David P. Curnow, and Bruce R. Castetter, Chief, Assistant United States Attorneys, Appellate Section, Criminal Division, and Laura E. Duffy, United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

GRABER, Circuit Judge:

Defendant Cesar Gomez appeals his conviction on one count of importation of methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, after he was caught crossing the border with methamphetamine in his car. Defendant claimed ignorance of the presence of drugs in his car, but the jury convicted him. On appeal, Defendant argues that the prosecution's introduction of a post-arrest statement violated *Miranda v. Arizona*, 384 U.S. 436 (1966); that the admission of an expert witness' testimony violated the Federal Rules of Evidence and the Confrontation Clause; and that the prosecutor's closing argument amounted to prosecutorial misconduct. We disagree and, accordingly, affirm.

FACTUAL AND PROCEDURAL HISTORY

Defendant attempted to cross the United States-Mexico border as the sole occupant of a Toyota Camry. Border officials discovered, hidden in the gas tank, 15 packages containing several kilograms of methamphetamine. After the officials informed Defendant of his *Miranda* rights, the following exchange occurred:

> [Agent Steven Fuentes]: Okay, do you understand your rights, yes or no?
>
> Gomez: Uh-hmm.
>
> Fuentes: 'kay. Do you want to speak with us and say your story?
>
> [5 second pause]
>
> Gomez: Uhmm. Mmm, I can't talk.
>
> Fuentes: Uh, no, you can't—why can't you talk? Just—what?
>
> Gomez: Because, no.
>
> Fuentes: You don't, don't want to talk?
>
> Gomez: No, it's that no, I can't talk. It . . . it's my family, you see.
>
> Fuentes: Say again?
>
> Gomez: It's my family.

Fuentes:  Your family?

Gomez:  Yes.  It's, I'm just going to say something.  Okay?

Fuentes:  [unintelligible]

Gomez:  Listen, listen, listen, listen, listen [unintelligible] . . . I can't say anything because my family . . . my family will get killed.  Okay?

Fuentes:  Okay, [unintelligible], *so* you don't, you don't want to talk?

Gomez:  I don't want to talk.

Fuentes:  Okay, that's fine.  It's your right.

(Ellipses and brackets in transcription.)    No further questioning occurred.

The government indicted Defendant on one count of importation of methamphetamine, in violation of 21 U.S.C. §§ 952 and 960.  Before trial, Defendant moved to suppress his post-arrest statement that "I can't say anything because my family . . . my family will get killed."  The district court held that the government could not introduce the statement during its case-in-chief, because Defendant invoked his *Miranda* rights when he first said "I can't talk," but that the government could introduce the statement during rebuttal, as impeachment, if appropriate.  At trial, Defendant testified that he was unaware that the drugs were in the car.  During the government's rebuttal, Agent Fuentes testified that Defendant

"basically told me he could not talk because they were going to kill his family."

The jury convicted Defendant. The district court sentenced him to 135 months' imprisonment. Defendant timely appeals his conviction.

## STANDARDS OF REVIEW

We review de novo whether the prosecutor's use of a defendant's silence violated the Constitution. *United States v. Caruto*, 532 F.3d 822, 827 (9th Cir. 2008). We review for abuse of discretion the admission of expert testimony. *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1070 (9th Cir. 2011). We review de novo alleged violations of the Confrontation Clause, *United States v. Preston*, 706 F.3d 1106, 1119 (9th Cir. 2013), and the interpretation of the Federal Rules of Evidence, *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1608 (2012). If the defendant fails to object, we review for plain error. *United States v. Hayat*, 710 F.3d 875, 893 (9th Cir. 2013).

## DISCUSSION

### A. *Post-Arrest Statement*

Due process requires that a defendant's silence after receiving *Miranda* warnings not be used against him or her at trial. *Doyle v. Ohio*, 426 U.S. 610 (1976). In *Doyle*, the defendants had remained silent when arrested by the police and given *Miranda* warnings but, at trial, they testified for the first time that they had been framed. *Id.* at 612–13. The prosecutors cross-examined the defendants about their previous silence, suggesting that, if the defendants truly had

been framed, they would have said so at the time of their arrest. *Id.* at 613–14. The Supreme Court reversed, holding that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619.

That rule—that a defendant's *silence* cannot be used against him or her—differs from the rule concerning a defendant's voluntary *statements*. Statements obtained in violation of *Miranda* generally are inadmissible in the government's case-in-chief. *New York v. Harris*, 495 U.S. 14, 20 (1990). But a defendant's voluntary statements—even if obtained in violation of *Miranda*—are admissible as impeachment evidence. *See Oregon v. Elstad*, 470 U.S. 298, 307 (1985) ("[T]he *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted. Despite the fact that patently *voluntary* statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination."); *Harris v. New York*, 401 U.S. 222, 224 (1971) ("It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."); *id.* at 226 ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."). Put simply, "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent

statements." *Anderson v. Charles*, 447 U.S. 404, 408 (1980) (per curiam).

Here, the prosecution introduced *as impeachment evidence* Defendant's *statement*—that he feared for his family's safety—not the fact of his silence. Under the Supreme Court precedent just discussed, Defendant's statement is admissible for that purpose.

There are two important limitations on the government's ability to impeach a defendant with prior inconsistent statements taken in violation of *Miranda*. First, the statement must have been voluntary. *United States v. Makhlouta*, 790 F.2d 1400, 1404 (9th Cir. 1986). Here, Defendant does not dispute, and we easily conclude, that his statement was voluntary. Defendant said: "I'm just going to say something. Okay?" When Agent Fuentes started to speak, Defendant interrupted: "Listen, listen, listen, listen, listen [unintelligible] . . . I can't say anything because my family . . . my family will get killed. Okay?"[1]

---

[1] We recognize that the government's ability to use a defendant's statements as impeachment evidence may decrease the deterrent effect of *Miranda* on continued government questioning after invocation of the right to remain silent. But the Supreme Court long ago considered that argument and rejected it. *See Harris*, 401 U.S. at 225 ("Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief."). The Court also has noted that "[i]f, in a given case, the officer's conduct amounts to an abuse, that case . . . may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness." *Oregon v. Hass*, 420 U.S. 714, 723 (1975). The clarifying questions in this case were not an abuse.

The second relevant limitation is that, in order to be admissible, the statement must be "*arguably*" inconsistent with the defendant's testimony at trial. *Id.* Again, Defendant does not dispute, and we conclude, that his statement that he feared for his family's safety was arguably inconsistent with his trial testimony that he lacked knowledge of the drugs. The prosecution asked the jury to draw the inference that Defendant's family in Mexico faced danger only if, in fact, he had knowledge of the drugs when he left Mexico, and that, accordingly, his denial of knowledge was not credible.[2]

We also stress that the prosecution sought to impeach Defendant not for his failure to talk to Agent Fuentes but for his stated reason for declining to talk. It would be a very different case had the prosecution argued that Defendant's silence itself undermined his credibility or had Agent Fuentes testified that Defendant said *only*, "I can't talk." Those hypothetical situations would fall clearly within the scope of *Doyle*. Because the impeachment evidence here concerned Defendant's *statement*, however, *Doyle*'s rule does not apply. *See Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986) ("The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that *his silence* will not be used against him and thereafter to breach that promise by using *the silence* to impeach his trial testimony." (emphases added)).

---

[2] Defendant's earlier statement would not have been admissible if, for example, Defendant had claimed the defense of duress and testified at trial that he smuggled the drugs because he feared for his family's safety. Without an arguable inconsistency, there is nothing to impeach, and the government could not have introduced the earlier *consistent* statement.

For similar reasons, we reject Defendant's argument that, because the statement was a description of why he refused to talk, the Constitution necessarily prohibits the use of the statement. Defendant leans heavily on our decisions in *United States v. Bushyhead*, 270 F.3d 905 (9th Cir. 2001), and *Hurd v. Terhune*, 619 F.3d 1080 (9th Cir. 2010). In those cases, we held only that, when the prosecution attempts to use a defendant's "explanatory refusal" *in its case-in-chief, as affirmative evidence of guilt or consciousness of guilt*, the Fifth Amendment bars the introduction of the explanation just as it bars the introduction of the silence. *Bushyhead*, 270 F.3d at 911–13; *Hurd*, 619 F.3d at 1084, 1089. But context matters. Indeed, in *Doyle* itself, the Supreme Court noted that even a defendant's silence can be admissible as impeachment, depending on the context: "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." 426 U.S. at 619 n.11. Similarly, here, when Defendant testified in a manner arguably inconsistent with his earlier explanation, the Constitution does not prohibit the use of his explanation *during rebuttal only, as impeachment evidence. See, e.g.*, *Harris*, 401 U.S. at 224 ("It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can . . . provide himself with a shield against contradiction of his untruths." (internal quotation marks omitted)); *see also Anderson*, 447 U.S. at 408 ("*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements."). *Bushyhead* and *Hurd* thus do not change our analysis, because those cases concerned the use of a statement during the case-in-chief as affirmative evidence

of guilt, whereas here we analyze the prosecutor's use of the statement during rebuttal and only as impeachment evidence.

We are confident in our conclusion that the holdings of *Bushyhead* and *Hurd* did not concern the use of an "explanatory refusal" as *impeachment*, not only because that issue was not presented in those cases, but also because such a broad reading would contradict *Doyle* itself. As just noted, *Doyle* recognized that, if a defendant testified that he had not remained silent, the prosecutor's use of his silence would be fair game on rebuttal to undermine the defendant's credibility. Contradiction counts. Yet Defendant's broad reading of *Bushyhead* and *Hurd* would preclude the use of "silence" (however broadly defined) for *any* purpose. We decline to extend the reach of our previous cases beyond their facts in a manner that would contradict Supreme Court precedent.

Our holding is fully consistent with Supreme Court principles. A voluntary statement that, for instance, "I committed the murder," is admissible during rebuttal as impeachment evidence if the defendant testifies at trial that "I saw John Doe commit the murder." A contrary rule "would pervert the constitutional right into a right to falsify free from the embarrassment of impeachment evidence from the defendant's own mouth." *Hass*, 420 U.S. at 723. We see no reason to apply a different principle if the defendant happened to make the statement as an explanation for a refusal to talk: "I don't want to talk because I committed the murder." The Constitution protects the statement "I committed the murder" from use as affirmative evidence of guilt in the prosecution's case-in-chief. But, if the Defendant testifies to the contrary, use of the prior inconsistent statement as impeachment evidence during rebuttal promotes

what the Supreme Court in *Doyle* recognized as an important value:  "the truth-seeking function of a trial."   *Doyle*, 426 U.S. at 617 n.7; *see also Harris*, 401 U.S. at 224 ("There is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." (internal quotation marks and alteration omitted)).

Because Defendant's statement was voluntary and arguably inconsistent with his trial testimony, and because the prosecution used the statement only as impeachment during rebuttal, we hold that the district court did not err in admitting Agent Fuentes' testimony.

B.  *Testimony by Special Agent Hector Banos*

At trial, Special Agent Hector Banos testified as an expert witness on several topics, including his expert opinion that drug-trafficking organizations do not use unknowing drug couriers.   Defendant argues that the admission of Agent Banos' testimony violated Federal Rule of Evidence 704(b), Federal Rule of Evidence 403, and the Confrontation Clause. We disagree.

The expert testimony here did not violate Rule 704(b), because the prosecutor's questions "only evoked expert testimony as to Agent [Banos'] experience with drug traffickers and not any 'explicit opinion' of [Defendant's] state of mind or knowledge of his transportation of drugs." *United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001), *overruled on other grounds as recognized by United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007).   Although Agent Banos answered many questions concerning his experience, Defendant argues that, because a sole question

did not include the limiting phrase "in your experience," that question ran afoul of Rule 704(b).  Read in proper context, however, that question—like all the others—asked for Agent Banos' expert opinion, in his experience.

Defendant's Rule 403 challenge also fails.  The district court is not required to "mechanically recite Rule 403's requirements before admitting evidence." *United States v. Ono*, 918 F.2d 1462, 1465 (9th Cir. 1990) (internal quotation marks omitted).  "It is enough that this court can conclude, based on a review of the record, that the district court considered Rule 403's requirements." *Id.*  In our view, the hearing transcript shows that the district court fully and carefully considered all the issues and conducted the necessary Rule 403 balancing.  Nor did the district court err in its assessment:  The evidence was probative and relevant, and it was not unduly prejudicial.

Defendant's Confrontation Clause challenge requires more discussion.  In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."   Although we have not discussed at length the Confrontation Clause in the context of a testifying expert witness, our sister circuits have sketched the broad contours of the doctrine:

> An expert witness's reliance on evidence that *Crawford* would bar if offered directly only becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true

> expert whose considered opinion sheds light on some specialized factual situation. Allowing a witness simply to parrot "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion" would provide an end run around *Crawford*. *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007). For this reason, an expert's use of testimonial hearsay is a matter of degree. The question is whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay. As long as he is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem. The expert's opinion will be an original product that can be tested through cross-examination.

*United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009) (one citation omitted); *see also United States v. Pablo*, 696 F.3d 1280, 1287–89 (10th Cir. 2012) (describing the doctrine); *United States v. Mejia*, 545 F.3d 179, 197–99 (2d Cir. 2008) (same); *United States v. Maher*, 454 F.3d 13, 19–23 (1st Cir. 2006) (same); *United States v. Silva*, 380 F.3d 1018, 1019–21 (7th Cir. 2004) (same).

Here, Defendant challenges the following two questions and answers:

> [Prosecutor:] Q. And among the individuals that you have interviewed, have you

interviewed individuals that have agreed to smuggle narcotics in exchange for payment?

[Agent Banos:]  A.  Yes.

Q.  And in those interviews, is the payment relatively small in comparison to the value of the narcotics being smuggled?

A.  Yes.

Defendant argues that Agent Banos conveyed the out-of-court testimonial statements of his previous interviewees, in violation of the Confrontation Clause.  Because Defendant did not object on the ground that the questions violated the Confrontation Clause,[3] we review for plain error.  *Hayat*, 710 F.3d at 893.  To prevail, Defendant must establish "(1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  *United States v. Moreland*, 622 F.3d 1147,  1158 (9th Cir. 2010) (internal quotation marks omitted).

The bulk of Agent Banos' testimony plainly passes muster.  For example, Agent Banos testified that, *in his experience* (that is, applying his expertise), drug organizations do not use unknowing couriers.  It does not matter that his experience or expertise arises in part from his having heard testimonial statements.  *See Johnson*,

---

[3] Defendant never objected at trial on the ground that the questions violated the Confrontation Clause, and the only pretrial objection that even mentioned the Confrontation Clause concerned a separate issue altogether—notice and discovery under Rule 16.

587 F.3d at 635–36 ("The fact that their expertise was in some way shaped by their exposure to testimonial hearsay does not mean that the Confrontation Clause was violated when they presented their independent assessments to the jury."). Defendant wisely does not challenge most of Agent Banos' testimony; he challenges only the two questions quoted above.

The wording of the second question is potentially problematic: "And *in those interviews* [by Agent Banos with individuals who have smuggled drugs for payment], is the payment relatively small in comparison to the value of the narcotics being smuggled?" (Emphasis added.) The question could be understood to query the content of Agent Banos' previous interviews,[4] which would violate the Confrontation Clause.[5] *See United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003) (holding that introduction of recorded conversations via an expert's testimony violated the Confrontation Clause where no expertise was needed to understand the conversation). But we need not decide whether the two disputed questions violated the Confrontation Clause because, even if they did, the error was not plain.

---

[4] Taken literally, the question does not actually ask about the content of the interviews because the payments to which the main part of the sentence refers did not occur during the interviews. The question more likely was meant to convey, and did convey, "Did you learn in those interviews whether payments were relatively small in comparison to the value of the narcotics being smuggled?"

[5] The government argues, in the alternative, that the statements were neither testimonial nor introduced for the truth of the matter asserted. We need not decide those issues because, as we explain in text, there was no reversible error.

The questions called for *some* level of independent judgment on the part of Agent Banos, such as an estimation of the total value of the drugs. *See Johnson*, 587 F.3d at 635 ("As long as he is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem."). Even if they might not have called for a high level of expertise, the questions were not so clearly in violation of the Confrontation Clause that the district court should have recognized the violation sua sponte—particularly because the line between appropriate expert testimony and inadmissible testimony is blurry. *See, e.g.*, *Pablo*, 696 F.3d at 1289 (holding that admissibility "may turn on phrasing subtleties in the prosecutor's questions and the witness's responses"); *Johnson*, 587 F.3d at 635 (holding that "an expert's use of testimonial hearsay is a matter of degree"); *Maher*, 454 F.3d at 23 ("The dividing line often will not be clear between what is true background to explain police conduct (and thus an exception to the hearsay rule and thus an exception to *Crawford*) and what is an attempt to evade *Crawford* and the normal restrictions on hearsay."); *Dukagjini*, 326 F.3d at 59 (holding that "in some cases it may be difficult to discern the line between permissible and impermissible reliance on hearsay").

For similar reasons, any error was harmless. The specific testimonial statements were neither damning nor of great force, as in cases in which the testimonial statements pertain to the defendant *directly*. *See, e.g.*, *Mejia*, 545 F.3d at 199 (reversing where the testimonial statements were made by members of the same gang as the defendant and arose "*during the course of this very investigation*"); *Lombardozzi*, 491 F.3d at 72 (holding that admission of testimonial statements via an expert that described the rank of *the defendant* within a crime

family violated the Confrontation Clause but holding that the error did not affect the defendant's substantial rights).  There is no reasonable likelihood that, in the context of the testimony as a whole, the two isolated questions challenged on appeal, which concerned persons and activities unrelated to Defendant's case, had an effect on the verdict.

In sum, the district court did not commit reversible error by admitting Agent Banos' testimony.

C.  *Prosecutorial Misconduct*

At the very end of his closing argument, the prosecutor stated:

> Now, the United States has the burden of proof beyond a reasonable doubt.  Is the evidence that was presented in this case proof beyond a reasonable doubt?  Absolutely.  And now it's your duty to say the defendant is guilty of importing methamphetamine.  Thank you.

Defendant argues that the prosecutor's statement that it was the jury's "duty" to convict Defendant amounted to prosecutorial misconduct under *United States v. Sanchez*, 176 F.3d 1214 (9th Cir. 1999).  Because Defendant did not object, we review for plain error.  *Hayat*, 710 F.3d at 893.  In any event, we conclude that there was no error.

Defendant's argument rests solely on our decision in *Sanchez*.  In that case, the prosecutor argued:

> And I would ask your consideration, as every jury has done, and that is that after the marshal's service has done their duty and the court has done its duty and lawyers on both sides have done their duty, that you as jurors do your duty and well consider this matter and find these defendants guilty.

*Sanchez*, 176 F.3d at 1224.  We held that, although it is proper to tell the jury that it is its duty to convict if it concludes that the defendant is guilty beyond a reasonable doubt, the prosecutor in *Sanchez* improperly told the jury, without qualification, that it was the jury's duty to convict. *Id.* at 1224–25.

Although we held in *Sanchez* that "[t]here is perhaps a fine line between a proper and improper 'do your duty' argument," *id.* at 1225, the prosecutor's summation here falls on the proper side of the line.  Read in context, the prosecutor was arguing that, *if* the jury finds that the prosecution has met its burden of proving the elements beyond a reasonable doubt, *then* it is the jury's duty to convict.  Understood in that way, the prosecutor's statement is clearly proper.  Indeed, the jury instructions in this case, taken verbatim from the model jury instructions, state essentially the same thing, including the use of the word "duty":  "[I]f after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty."  Ninth Circuit Model Criminal Jury Instr. 3.5.

In *Sanchez*, the prosecutor's statement strongly implied that, just as the marshal's service has a duty to protect the court, and the court has a duty to preside over the case, and

the lawyers have a duty to present the case, the jury has a duty to find the defendant guilty. No such improper inference appears here. The prosecutor did not refer to the "duty" of any other person, and the prosecutor made the challenged statement immediately after reminding the jury of the prosecution's "burden of proof beyond a reasonable doubt." Read in context, the prosecutor's statement did not amount to error.

**AFFIRMED.**

WATFORD, Circuit Judge, dissenting:

Under *United States v. Bushyhead*, 270 F.3d 905 (9th Cir. 2001), Gomez's statement that he could not speak to officers because his "family will get killed" should have been excluded, even as impeachment evidence. The majority reads *Bushyhead* as precluding the use of Gomez's statement only in the government's case-in-chief, but I do not think the case can be read that narrowly.

The majority does not dispute that, as in *Bushyhead*, the "entirety" of Gomez's statement was "an invocation of his right to silence." *Id.* at 913. Instead, the majority holds that *Bushyhead* did not address whether a defendant's explanation for his refusal to talk can be used for impeachment purposes. It is true that in *Bushyhead* the government used the contested statement in its case-in-chief rather than as impeachment evidence, but the court's analysis did not turn on that distinction. To the contrary, *Bushyhead* based its holding on *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), which squarely held that a defendant's post-*Miranda* silence may not be used even

as impeachment evidence.  In expanding the reach of *Doyle* to include "not merely the silence itself, but the circumstances of that silence as well," *Bushyhead*, 270 F.3d at 913, we implicitly carried over the full range of protections *Doyle* established to this broadened definition of silence.

In my view, this is the only permissible reading of *Bushyhead*.  Except in recounting the sequence of events at trial, the opinion did not discuss when or for what purpose the contested statement was used.  *See id.* at 908–09, 911–12. Nor is there any doubt that we understood *Doyle* to be a case about impeachment, as evidenced by the several references to impeachment in our summary of, and quotations from, that case.  *See id.* at 912.  Because *Doyle* was the primary authority on which we drew to preclude the use of Bushyhead's statement at trial, we cannot now plausibly say that *Bushyhead* left the present issue undecided.  Simply put, a defendant's explanation for his refusal to talk receives protection at all only because *Bushyhead* equated it with silence itself.  If such explanations are treated as the equivalent of silence, there is no authority for providing them with anything less than the full protection *Doyle* requires.

The majority's suggestion that this reading of *Bushyhead* would contradict *Doyle* is unpersuasive.  *Doyle* recognized a narrow exception permitting the government to use post-*Miranda* silence to impeach "a defendant who testifies to an exculpatory version of events *and claims to have told the police the same version upon arrest*."  *Doyle*, 426 U.S. at 619 n.11 (emphasis added).  Nothing I have said here about *Bushyhead* would affect the availability of that exception, which turns on whether the defendant has put in issue what happened at the time of arrest.  If Gomez had falsely testified that he made certain statements to the officers, he would have

opened the door to the use of his silence, along with the circumstances of that silence, to impeach his account of the interview. Instead, as in *Doyle*, the impeachment evidence was used in this case to undermine the credibility of "the exculpatory story" itself. *Id.* at 620 n.11. Thus, applying *Bushyhead* to preclude such impeachment is fully consistent with *Doyle*'s reasoning.

The government should not have been permitted to use Gomez's statement that his "family will get killed" to impeach his claimed lack of knowledge of the drugs in the car. The only other evidence tending to prove Gomez's knowledge was his status as the car's sole occupant and expert testimony suggesting that drug trafficking organizations do not typically use unknowing couriers to transport drugs. Because Gomez's statement was the most compelling evidence against him, I cannot say the error in admitting it was harmless beyond a reasonable doubt. *See Neder v. United States*, 527 U.S. 1, 15 (1999).