**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 24 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-30372 |
| Plaintiff - Appellee, | D.C. No. 3:11-cr-00247-BR-1 |
| v. | |
| MARK A NEUMAN, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-30373 |
| Plaintiff - Appellee, | D.C. No. 3:11-cr-00247-BR-3 |
| v. | |
| LANE D. LYONS, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-30374 |
| Plaintiff - Appellee, | D.C. No. 3:11-cr-00247-BR-2 |
| v. | |

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

TIMOTHY D. LARKIN,

Defendant - Appellant.

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted July 6, 2015[**]
Portland, Oregon

Before: PREGERSON, N.R. SMITH, and OWENS, Circuit Judges.

Mark Neuman, Lane Lyons, and Timothy Larkin appeal their jury convictions and sentences for conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and conspiracy to commit transactional money laundering in violation of 18 U.S.C. § 1956(h), arising from their misuse of client funds as principals in Summit Accommodators, a 1031 qualified intermediary exchange company. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court.

1.      The district court did not abuse its discretion when it granted the government's motion to preclude the Defendants' expert witness (cognitive psychologist Shawn Davis, Ph.D.) from testifying. Defendants' expert disclosure

---

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

was (1) untimely in violation of Fed. R. Crim. P. 16 (evidence presented indicates that Defendants did not provide Davis's full report to the government or to the court until around June 18, 2013, over eighth days after the trial began and clearly well after the court-imposed deadline for expert-witness disclosures of April 26, 2013. *See United States v. Urena*, 659 F.3d 903, 909 (9th Cir. 2011)); and (2) excludable under Fed. R. Evid. 702, because Defendants failed to establish that Davis's proffered testimony was reliable or that it would be helpful to the jury. *See United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007). Thus, the district court's decision to preclude Davis's testimony was not "illogical, implausible, or without support." *See United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc); *see also United States v. Olano*, 62 F.3d 1180, 1204 (9th Cir. 1995) ("[T]rial courts have very broad discretion in applying Rule 403 . . . .").

2. The district court did not abuse its discretion in precluding evidence related to a 2006 IRS National Research Program audit of Summit's 2004 tax return. Defendants were charged and convicted of wire fraud and money laundering, not tax fraud. Thus, given Defendants' reason for wanting to introduce the evidence, it was not "illogical, implausible, or without support" for the district court to find that, under Federal Rule of Evidence 403, the marginal probative value of the

3

evidence was outweighed by the danger of unfair prejudice to the government and the risk that jurors may give it undue weight or misapply its significance. *See Hinkson*, 585 F.3d at 1263.

3.     Defendants' assertion that conspiracy to commit mail or wire fraud (Count One) cannot constitute "specified unlawful activity" under 18 U.S.C. §§ 1956 or 1961 is without merit. Section 1956(h) criminalizes the *agreement to commit* transactional money laundering, not the commission of transactional money laundering. Therefore, § 1956(h) does not require that substantive specified unlawful activity be charged or proven. *See United States v. Chao Fan Xu*, 706 F.3d 965, 980 (9th Cir. 2013) ("The conspiratorial agreement [to violate § 1957(a)] represents the crystallization of the conspirator's culpable criminal intent; accomplishment of the underlying crime is immaterial to culpability."). Contrary to Defendants' assertions, a defendant does *not* have to commit or be convicted of the underlying substantive specified unlawful activity that generated the illegal proceeds to be guilty of a conspiracy to commit money laundering. *See Chao Fan Xu*, 706 F.3d at 980; *United States v. Kimbrew*, 406 F.3d 1149, 1151-52 (9th Cir. 2005) (upholding conviction for conspiracy to commit money laundering where jury acquitted defendant of conspiracy to commit mail fraud and wire fraud and of substantive wire fraud).

4

4.     a.     The district court did not abuse its discretion in giving a deliberate ignorance jury instruction.  "[A] district court may give a deliberate ignorance instruction if it determines that a jury could rationally find deliberate ignorance, even if the jury had rejected the government's evidence of actual knowledge." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013).  The district court properly instructed the jury on deliberate ignorance, because (1) each Defendant disputed *actual* knowledge of the falsity of the information on Summit's website, in Summit's marketing materials, and made by Summit employees; (2) the instruction was necessary to address the concern that the jury could find that Defendants were aware that clients would find information about Summit's use and holding of client funds material, yet Defendants purposefully chose not to have or pursue "actual" knowledge of the information being conveyed to clients about their funds; and (3) the jury had to assess the evidence against each Defendant individually and the deliberate ignorance instruction properly accounted for each Defendant's varying levels of knowledge and involvement.

      b.     The district court did not err when declining to give a character instruction.  The Ninth Circuit Model Jury Instructions do not include a character instruction, explaining that such an instruction "adds nothing to the general instructions."  *See* Model Crim. Jury Instr. 9th Cir. 4.4 cmt. (2010).  Additionally,

5

Defendants were not impeded from fully developing a defense theory based on their good character. *See United States v. Moe*, 781 F.3d 1120, 1127-28 (9th Cir. 2015). Defendants called a number of character witnesses who testified that the Defendants were truthful and honest. The jury instructions as a whole adequately covered this defense theory by informing the jury that any credited testimony could establish reasonable doubt.

c. The district court's jury instruction correctly defined a "scheme to defraud or to obtain money or property" in the context of this case. Although contested, the district court used the same language previously affirmed by this court in *United States v. Woods*, 335 F.3d 993, 997-98 (9th Cir. 2003) (such language is now referred to as a "*Woods* Instruction"). A *Woods* instruction was appropriate given the facts of this case and Defendants' theory of defense.

5. Given the scope of Lyons's and Larkin's joint undertakings in the conspiracy, and the forseeability that they would not be able to provide clients their funds when due, the district court did not abuse its discretion when it attributed the full amount of the financial loss to each Defendant. The district court made specific findings of fact (consistent with the requirements of U.S.S.G. § 1B1.3), as to both the scope of each Lyons's and Larkin's participation in the "joint

undertaking" and the losses "reasonably foreseeable" to each of them. *See United States v. Treadwell*, 593 F.3d 990, 1003 (9th Cir. 2010).

The district court further found that: (a) although Larkin and Lyons joined the conspiracy later than Neuman, all Defendants knew by October 2006 that their personal use of client funds and the resulting Inland debt meant they never maintained enough liquidity to cover that debt if all clients were to be paid at the same time; and (b) by 2007, all Defendants were aware that clients were given misleading information about the security of the exchange funds.

6. The district court did not err in allowing the government to use the "Lyons' Confidential Memo" in its case-in-chief against all Defendants. The government obtained the Memo from Assistant Federal Public Defender Schatz, a source that was wholly independent of Larkin's proffer. *See Kastigar v. United States*, 406 U.S. 441, 460 (1972). Thus, this source of the Memo was not tainted by Larkin's proffer. Additionally, Defendants failed to establish that the Confidential Memo was protected by attorney-client privilege. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Lyons composed the inculpatory Memo in anticipation of a partnership meeting that occurred the following day. Therefore, the Confidential Memo was *not attorney work product*. Rather, it was a preexisting Summit record prepared by a Summit partner (Lyons) in preparation of a meeting.

Further, the Confidential Memo was not protected by a joint defense agreement ("JDA").

Evidence presented refutes Defendants' claim that there existed a specific coordinated strategy (JDA) among defense counsel in the early stages of the criminal investigation. Rather than working in concert, Larkin and Lyons individually pursued proffer agreements from the government. Larkin and Lyons each actively and individually sought to gain an early advantage over the other defendants and sought to minimize charges. Neuman was unaware of both Lyons's and Larkin's proffer discussions with the government. Certainly, Neuman and his counsel did not approve Larkin's disclosure of the Confidential Memo to the government.

7.     The district court did not abuse its discretion in denying Larkin's motion for a *Kastigar* hearing. There were no factual issues left to resolve. *See United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995) ("[A *Kastigar*] hearing is not required if no factual issues are left to resolve, or if the government meets its burden to show independent sources through the use of affidavits,"). The issue of the Confidential Memo was exhaustively briefed, and Larkin had numerous opportunities to present evidence and argument to the district court prior to it issuing its May 1, 2013, sixty-three page opinion and order on the issue. Although

8

the court did not label its full-day April 9, 2013 hearing as a *Kastigar* hearing, the court made it clear that the hearing was intended to encompass *all* issues concerning whether the government could use the Lyons Confidential Memo in its case-in-chief against Defendants.

Additionally, the district court properly denied Larkin's motion to reopen the record. Contrary to Larkin's assertions, his proposed new evidence was not "newly discovered." *See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Rather, Larkin had made a conscious and strategic decision to withhold the evidence, despite the fact that the court stated (prior to its April 9, 2013 hearing) that it was going to take *all* evidence related to the government's use of the Confidential Memo, so that it could make a comprehensive ruling and would not have to revisit the issue "over and over again."

**AFFIRMED**.