**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 23 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50540 |
| Plaintiff-Appellee, | D.C. No. 2:11-cr-00050-RGK-27 |
| v. | |
| OSVALDO AGUIRRA, AKA Smoggy, | MEMORANDUM * |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50544 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00229-RGK-1 |
| v. | |
| CHRISTIAN OSVALDO AGUIRRE, AKA Osvaldo Aguirre-Orduno, AKA Christian Orduno, AKA Smoggy, | |
| Defendant-Appellant. | |

Appeals from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 8, 2017
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  REINHARDT, TASHIMA, and NGUYEN, Circuit Judges.

Christian Osvaldo Aguirre pleaded guilty to a single count of illegal reentry in violation of 8 U.S.C. § 1326(a) and, in a separate case, was convicted following a jury trial of violent crime in aid of racketeering (VICAR) and racketeering conspiracy (RICO) in violation of 18 U.S.C. §§ 1959(a)(4) and 1962(d).  Aguirre appeals his convictions and sentence.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**1.**  Aguirre argues that his *Faretta* waiver was constitutionally deficient because he was not adequately advised of the "dangers and disadvantages of self-representation."  *See United States v. Hayes*, 231 F.3d 1132, 1136 (9th Cir. 2000) (quoting *United States v. Hernandez,* 203 F.3d 614, 624 (9th Cir. 2000)).  In his illegal reentry case, however, Aguirre did not represent himself at trial, but instead pled guilty prior to its start.  At the plea hearing stage, the *Faretta* admonishment need not be as "searching or formal."  *Iowa v. Tovar*, 541 U.S. 77, 89 (2004).  At the plea stage, "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea."  *Id.* at 81.  Here, the district court met that requirement fully.  In his separate racketeering case, Aguirre voluntarily withdrew his pro se status and was represented by appointed counsel throughout the trial and

2

sentencing stages. Therefore, any purported deficiency in the district court's *Faretta* advisement with regard to the racketeering case is immaterial.

**2.** Aguirre argues that the evidence at trial was insufficient to support his conviction on the RICO and VICAR racketeering charges. Reviewing de novo, *see United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005), we affirm.

The evidence was sufficient to support Aguirre's RICO conviction because a rational jury could have concluded that he "conspire[d] to conduct or participate in the conduct of an enterprise's affairs, where its affairs are conducted through a pattern of racketeering activity." *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984). Contrary to Aguirre's argument, he need not have personally committed two predicate offenses. *Id.* Ample evidence shows that Aguirre was not only a member of the 38th Street Gang, but that he knew of and participated in multiple acts of extortion. For example, while he was incarcerated, Aguirre asked another gang member to tell him who was in charge of the extortion at the swap meet. Aguirre's wife was given cash, which Aguirre's brother-in-law later identified as being "from the swap meet." Aguirre's brother-in-law also told Aguirre that he gave cash to a gang member named "Listo," who was later arrested with documentation of extortion payments. Finally, on an intercepted phone call after Aguirre's arrest, gang members talked about a new gang member who was picking up extortion payments "for the same people that [Aguirre] was picking up for."

3

Sufficient evidence also supports Aguirre's VICAR conviction. Aguirre had threatened a security guard with murder to further the gang's extortion efforts, and a rational jury could infer that he did so to maintain or increase his status in the gang.

**3.** Aguirre argues that the testimony of Detective Frank Trujillo violated the Confrontation Clause. Expert witnesses may give their independent judgment even if it was shaped by exposure to testimonial hearsay. *United States v. Gomez*, 725 F.3d 1121, 1130 (9th Cir. 2013). They may not, however, serve as "little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." *Id.* (quoting *United States v. Johnson,* 587 F.3d 625, 635 (4th Cir. 2009)). Aguirre did not object at trial, so we review for plain error. *Id.* at 1129.

Aguirre's argument fails for two reasons. First, Aguirre fails to identify any testimony where Detective Trujillo served as little more than a conduit for testimonial hearsay. Second, the only alleged prejudice Aguirre claims to suffer as a result of the hearsay was Trujillo's corroboration that Aguirre and the gang member that went by "Smoggy" were the same person. No plausible prejudice arose from this testimony because Aguirre referred to himself as Smoggy in a recorded jail call, his ex-wife identified him as Smoggy, and he has Smoggy tattooed on his head. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)

4

(applying the harmless error standard to Confrontation Clause violations).

The district court erred in failing to give a jury instruction covering Trujillo's dual expert and percipient roles, *see United States v. Vera*, 770 F.3d 1232, 1243 (9th Cir. 2014), but that error was harmless, *see United States v. Bonilla-Guizar*, 729 F.3d 1179, 1185 (9th Cir. 2013). The government laid an adequate foundation for Trujillo's testimony, and there is no indication in the record that the jury inappropriately deferred to Trujillo's expert knowledge in a way that would have affected the verdict.

**4.** The district court did not abuse its discretion in denying Aguirre's requests for a continuance. We review the denial of a defendant's request for continuance of trial for abuse of discretion. *United States v. Wilkes*, 662 F.3d 524, 543 (9th Cir. 2011). To demonstrate an abuse of discretion, a defendant must show prejudice as a result of the denial of his request. *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985). Aguirre cannot do so. He points to no evidence he would have introduced or steps he would have taken had he obtained a continuance or how they would have influenced the outcome of either case.

Aguirre's argument that 18 U.S.C. § 3161(c)(2) required a continuance for his illegal reentry case also fails. The statute states that a "trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." Trial

5

here commenced more than thirty days from Aguirre's first appearance through counsel but fewer than thirty days after Aguirre waived counsel and proceeded pro se. Aguirre's first appearance through counsel started the 30-day clock, and the subsequent waiver of counsel did not reset it. *See United States v. Rojas-Contreras*, 474 U.S. 231, 234 (1985) (holding that the defendant's first appearance through counsel started the 30-day clock and that a superseding indictment did not reset it).

5. Aguirre argues that the district court's denial of a continuance rendered his guilty plea for illegal reentry involuntary. We review the voluntariness of a guilty plea de novo. *United States v. Timbana*, 222 F.3d 688, 701 (9th Cir. 2000). A guilty plea is coerced, and therefore involuntary, when the defendant is induced by promises or threats that deprive it of the nature of a voluntary act. *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007). The district court's failure to grant a continuance, however, was neither a threat nor a promise and did not undermine the voluntariness of Aguirre's guilty plea. Moreover, the court engaged in a thorough plea colloquy, and Aguirre stated that he wished to plead guilty "to save time for the Court and money of the taxpayers." Aguirre's claim that he did not voluntarily plead guilty is belied by the record.

6. In *United States v. Becerril-Lopez*, we held that a robbery conviction under California Penal Code § 211 is categorically a crime of violence for purposes

6

of § 2L1.2 of the United States Sentencing Guidelines. 541 F.3d 881, 893 (9th Cir. 2008). Aguirre argues that the Supreme Court overruled *Becerril-Lopez* in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016). We review this question de novo because although Aguirre raises this argument for the first time on appeal, it is a pure question of law, and the government has suffered no prejudice as a result. *See United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009).

We conclude that *Becerril-Lopez* is not "clearly irreconcilable with the reasoning or theory of" *Mathis* or *Descamps* and, therefore, as a three-judge panel, we are not at liberty to overrule our own precedent. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Both *Descamps* and *Mathis* considered only when it was appropriate for courts to use the modified categorical approach, leaving untouched the categorical analysis set forth in *Taylor v. United States*, 495 U.S. 575 (1990). 133 S. Ct. at 2283; 136 S. Ct. at 2248. *Becerril-Lopez* explicitly relied on *Taylor*'s categorical approach, 541 F.3d at 890, and not the modified categorical approach, *id.* at 893 n.10; *see also United States v. Dixon*, 805 F.3d 1193, 1196 (9th Cir. 2015) (citing to *Becerril-Lopez* as a "useful precedent[]" even after *Descamps*).

**AFFIRMED.**