FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

BRYAN RUSNAK,
*Defendant-Appellant.*

No. 17-10137

D.C. No.
4:15-cr-00894-
JGZ-LCK-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted February 11, 2020
Pasadena, California

Filed November 25, 2020

Before: Marsha S. Berzon, Ryan D. Nelson, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge R. Nelson

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for accessing, possessing, and distributing child pornography; vacated some of the Conditions of Supervised Release; and remanded for further proceedings.

The defendant argued that an FBI agent's trial testimony differed materially from his warrant affidavit, thereby entitling the defendant to suppression of the evidence seized pursuant to the warrant or, in the alternative, a second hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The panel held that the defendant arguably waived his *Franks* claim regarding the agent's trial testimony, and that any error was not plain.

The parties entered into an agreement that required them to disclose the identity of testifying witnesses and provided that any undisclosed witness was potentially subject to exclusion. The defendant claimed that the district court violated *Wardius v. Oregon*, 412 U.S. 470 (1973), by unequally enforcing the agreement when it limited the trial testimony of the defendant's wife—whom the defendant did not disclose as a potential witness—while allowing allegedly undisclosed testimony from the FBI agent. Assuming (without deciding) that de novo review applies and that *Wardius* applies to a district court's evidentiary decisions, the panel denied relief because the defendant, not the Government, benefited more from the district court's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

enforcement of the agreement. The panel wrote that this conclusion forecloses the defendant's additional arguments that the district court abused its discretion by failing to weigh the defendant's need for his wife's testimony prior to excluding it and that the district court erred by imposing a witness exclusion in violation of the Sixth Amendment.

The defendant claimed that the district court erred by allowing the Government to admit—in the guise of speaking questions—his wife's hearsay statements to FBI agents, and that the speaking questions were outside the scope of cross-examination. The panel held that the district court committed plain error by allowing the questions, which were outside the scope of direct examination, and by allowing the out-of-court hearsay statements for their truth under the guise of impeachment. The panel concluded, however, that the errors did not affect the defendant's substantial rights because the defendant did not show there is a reasonable probability that, but for the errors, the result of the proceeding would have been different.

Because the defendant was afforded the opportunity—albeit in a limited fashion—to redirect the defendant's wife, the panel rejected the defendant's contention that the Government's questions combined with the limited redirect violated his Confrontation Clause right to confront his wife about her statements to the FBI agents.

Rejecting the defendant's argument that the district court erred in denying his motion for a new trial because there was prosecutorial misconduct during its rebuttal summation, the panel held that the summation, while toeing the line, was ultimately a fair comment on the state of the evidence; and that the district court's curative oral instruction, repeated in a written instruction, makes any error harmless.

The panel held that the district court did not err, let alone plainly err, in imposing a lifetime term of supervised release. The Government conceded that remand is required to conform the written judgment to the oral pronouncement of Special Conditions of Supervised Release 2, 3, 4, 5, 6, 7, and 8; and that Special Conditions 5 and 8 must be vacated and remanded for the district court to reconsider. The panel held that imposition of Special Condition 7—which, conformed to the oral pronouncement, requires the defendant to submit to searches of his person and property by his probation officer, but does not contain a reasonable suspicion requirement—was not an abuse of discretion or plain error.

## COUNSEL

Molly A. Karlin (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Shelley K.G. Clemens (argued), Assistant United States Attorney; Robert L. Miskell, Appellate Chief; Michael Bailey, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

# OPINION

R. NELSON, Circuit Judge:

Bryan Rusnak appeals his conviction and sentence for accessing, possessing, and distributing child pornography. We affirm Rusnak's criminal conviction, vacate some of the challenged Conditions of Supervised Release, and remand for further proceedings.

## I

On May 10, 2014, FBI Agent Jimmie Daniels received eight images depicting child pornography from an unknown individual using a peer-to-peer file sharing website. Subscriber information from CenturyLink tied the unknown individual's IP address to Rusnak's home in Vail, Arizona. Nearly five months later FBI Agent Eric Campbell applied for a warrant to search Rusnak's home for evidence of child pornography. In his affidavit, Agent Campbell stated offenders "[o]ften maintain their collections . . . for several years" and keep the collections "close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly." He also stated that electronic files "can be recovered months or even years after they have been downloaded . . . using readily-available forensics tools."

FBI Agents executed the search warrant at Rusnak's home on October 2, 2014, seizing, among other things, two laptops and a desktop computer. A forensic search of the seized computers found child pornography and search terms associated with child pornography, and one of Rusnak's laptops had on it CCleaner—a downloadable software program used to delete information from computers—and PeerBlock—a downloadable software program that provides

"additional firewall . . . to keep people out of your computer."

Rusnak was indicted on four counts: two counts of knowing access with intent to view child pornography, one count of possession of child pornography, and one count of distribution of child pornography. He pled not guilty to each count.

Rusnak moved to suppress the evidence seized from his home. He argued the warrant to search his home lacked sufficient probable cause because Agent Campbell's warrant affidavit relied on stale evidence. The magistrate judge recommended denying Rusnak's motion to suppress, reasoning that the five-month delay between the day Agent Daniels received the child pornography and execution of the warrant "did not render th[e] evidence [relied on in the warrant affidavit] stale." According to the magistrate judge, despite the delay, it was likely at the time the warrant was issued that evidence of child pornography "would still be found" in Rusnak's home. The district court adopted the report and denied the motion.

Before trial, the Government and Rusnak entered an agreement (the "Agreement") to disclose to each other before trial "[a] list of all potential witnesses for the party's case in chief and a summary of their expected testimony if a report or statement covering the expected testimony ha[d] not already been provided." The Government filed a witness list that included Rusnak's wife, Stephanie, as a potential witness. Rusnak did not file a witness list and stated he was the only potential witness for his case in chief.

Rusnak asserted during his opening statement at trial that the evidence would show that a visitor to his home—later identified as his friend, Steve Chamberlain—accessed,

possessed, and distributed the child pornography without Rusnak's knowledge. The Government objected to Rusnak's opening, arguing it was "being sandbagged" because Rusnak had failed to disclose the identity of the alternate culprit. Rusnak reiterated he did not have witnesses and that information about third-party culprits would only come in if Rusnak testified or the Government solicited that testimony from Stephanie. The district court did not rule on the Government's objection.

Rusnak's appeal focuses on three portions of the trial: (1) the testimony of Agent Campbell; (2) the testimony of Rusnak's wife, Stephanie; and (3) the Government's summation. We describe those parts of the trial below.

*Agent Campbell's Testimony*

Agent Campbell, whose affidavit secured the search warrant for Rusnak's home, testified on the second and third days of trial. He asserted that CCleaner was discovered on Rusnak's laptop and "can be used to wipe . . . computers . . . mak[ing] it extremely difficult or impossible to find" the images of child pornography. He acknowledged that the Government "can't recover things that have been cleaned up, typically" but stated "[w]e kind of get lucky sometimes with the forensic review."

Agent Campbell also testified that he had observed a change in the characteristics of younger child pornography collectors versus older collectors:

> The change is we refer to them as download and deleters [*sic*]. We are seeing a lot more of that now. Especially as Internet speeds get faster, as our defendants or the subjects of our investigations get younger and more familiar

with technology, they are less likely to hold on to large collections. It may be stereotypical, but typically older individuals who live by themselves, they maintain those very large collections over years and years. What I'm seeing, though, are younger and younger people using these more high-speed technologies, they don't do that. They delete their stuff. They clean up after themselves, and they know they can go back and get it again.

Finally, Agent Campbell described the process used by child pornography collectors to find and download child pornography using peer-to-peer websites:

It's not a quick process. I mean, you've got to find it, so you search, and fortunately I guess child pornography is not that easy to find on the Internet. If you're looking for child pornography specifically, it's going to take longer . . . .

Once you find it, the torrent downloads itself just to give the instructions to uTorrent as to how to get those files. That part downloads pretty quick, but the lengthy process is getting that payload. Typically, uTorrent is used to get big files, and although it is a more efficient way to share files on the Internet, it's still not quick, especially if it's content that's not out there a lot, such as child pornography, a brand-new movie, or a brand-new TV show. Usually those things, they could be hours. If it's something that's really big and

really rare, you could leave it running for days.  Some people do that.

*Stephanie Rusnak's Testimony*

After the government rested its case without calling Stephanie, Rusnak attempted to call Stephanie as his first witness.  Rusnak had not listed Stephanie as a witness or provided a summary of her expected testimony, as required by the Agreement.  The Government moved to preclude Stephanie from testifying about any subject not disclosed during her FBI interviews, including whether other individuals could have been responsible for accessing, downloading, and distributing the child pornography.  Rusnak offered that he would not ask Stephanie "about other people in the house," so long as the Government did not argue during "closing that there was no corroboration for what Mr. Rusnak is going to say, because [Stephanie] would just corroborate what [Mr. Rusnak is] going to say, that there were a lot of people at the house."

The Government agreed to this arrangement, and the district court incorporated the arrangement in its subsequent ruling that "Ms. Rusnak [will] be precluded from testifying as to any subject matter that was not previously disclosed, and in this case it sounds as if the only disclosure that occurred was as part of the 302s and the interviews that were done of Ms. Rusnak."[1]

Stephanie testified that the only residents in the home were herself, her mother, Rusnak, and their two daughters.

---

[1] Summary FD-302 reports of Stephanie's two FBI interviews were produced to Rusnak.

During cross-examination, the Government asked Stephanie:

> Q. When you talked to the [FBI] agents in October of '14 and then again in March of '16, you told them you didn't know of anyone who could have downloaded child pornography at the house, correct?
>
> A. Right.
>
> Q. And you told them that no one else stayed at the house?
>
> A. I might have said that. I don't recall.

At the end of this exchange, Rusnak objected that the questions left a false impression with the jury that no visitors came to the house. The district court overruled Rusnak's objection, stating:

> I think you can follow up and ask her what she meant by stay at the house, but I don't think it's a backdoor way to get into people visited [*sic*] the house. And I think actually, in the common sense of the jurors, that "somebody doesn't stay at the house" doesn't mean that there aren't other people at the house.
>
> So I think you can clarify what she meant when she said that, but I don't think you can go into who else had access to the computers, as in who was using the computers, to the

extent that it's outside the scope of the interview.

Stephanie then clarified on redirect that when she "told the FBI [she] didn't know anybody else who was staying at the house" she meant "[n]obody else lived at the house."

*The Government's Summation*

During its summation, the Government focused on discrediting Rusnak's theory that Chamberlain or another visitor to the house was responsible for accessing, possessing, and distributing the child pornography. It argued "[y]ou . . . heard from . . . [Rusnak's] wife, and what she told law enforcement on multiple occasions is that she didn't know how child pornography could be on those computers."

The Government also posited that Rusnak's defense was implausible because he remained friends with Chamberlain. Pointing to a picture taken during the October 2014 search of Rusnak's home, the Government stated that Rusnak's desktop computer was

> right next to a crib, right next to a place where a child is sleeping. But what the defendant wants you to believe is that his friend that he's still friends with went into this room, looked at child pornography, did whatever it is he was going to do while he was looking at the child pornography right here next to this crib.

Rusnak objected, arguing that he had not moved into the home in the photograph until 2013 and that the metadata associated with the child pornography file on the desktop computer only showed that it was downloaded in 2010. The

Government countered that the file was "accessible" in October 2014.  The district court sustained Rusnak's objection, instructed the Government to "move on from that point," and issued a curative instruction to the jury reminding them "that the lawyers' statements aren't evidence.  You'll be the one to determine what the evidence is based on your recollection of that evidence, and your recollection controls."

*The Verdict, Post-Trial Motion, And Sentencing*

The jury returned a guilty verdict on all four counts. Rusnak sought a new trial, arguing (1) the limitation placed on Stephanie's testimony was improper; (2) Agent Campbell's testimony regarding the characteristics of younger child pornography defendants and the amount of time it takes to access child pornography was untimely under the Jencks Act; and (3) the Government's rebuttal summation regarding the proximity of the computer to the child's crib misstated the evidence and was unfairly prejudicial.

The district court denied Rusnak's motion for a new trial. It held that the limitation placed on Stephanie's testimony was an appropriate discovery sanction because Rusnak's "non-disclosure of Stephanie['s] . . . proposed testimony was for the purpose of tactical advantage."  Additionally, the district court held that Agent Campbell's description of younger child pornography defendants did not need to be disclosed under the Jencks Act.  Finally, the district court held that the Government's summation argument "was a fair comment on the state of the evidence" and that the curative instruction remedied any unfairness.

At sentencing, the district court varied downward, imposing concurrent 87-month sentences on all four counts.

It also imposed a lifetime term of supervised release, including eight Special Conditions of Supervised Release.

## II

Rusnak raises six claims of error relating to his conviction.  Each is unavailing.

## A

We begin with Rusnak's contention that Agent Campbell's trial testimony materially differed from his warrant affidavit, thereby entitling Rusnak to suppression of the evidence seized pursuant to the search warrant or, in the alternative, a second hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  We have not previously applied *Franks* in this way.  The Fourth Circuit, however, has held that a criminal defendant may be entitled to a *Franks* hearing when the affiant who secured the search warrant makes statements at trial that contradict the warrant affidavit.  *See United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017).

We need not decide whether to follow *White* because Rusnak waived his *Franks* claim regarding Agent Campbell's trial testimony.  "As a general rule, we will not consider issues raised for the first time on appeal." *United States v. Rubalcaba*, 811 F.2d 491, 493 (9th Cir. 1987). Though Rusnak made a *Franks* argument regarding the search warrant before a magistrate judge in September 2016, that argument was not predicated on Agent Campbell's trial testimony, which was not offered until October 2016. Unlike the defendant in *White*, Rusnak failed to "immediately request[]" a second *Franks* hearing after Agent Campbell testified.  *White*, 850 F.3d at 673.  And Rusnak did not make a *Franks* argument in his motion for a

new trial, instead arguing that Agent Campbell's trial testimony violated the Jencks Act.

An argument is waived where it is known to the defendant and intentionally not pursued. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). Rusnak was aware of the *Franks* doctrine because he made a *Franks* argument pretrial regarding the search warrant. Because there is "evidence that the defendant was aware of the right he was relinquishing and relinquished it anyway," Rusnak's *Franks* claim is arguably waived. *See United States v. Depue*, 912 F.3d 1227, 1233 (9th Cir. 2019) (en banc).

But even if we do not accept Rusnak's first *Franks* argument as evidence that he was aware of the availability of a newly minted *Franks* argument after Agent Campbell's testimony, his argument nonetheless fails. Absent "evidence that the defendant was aware of the right he was relinquishing[,] . . . failure to preserve a claim constitutes forfeiture subject to plain error review." *Id*. Plain error applies to a trial error that should have been, but was not, recognized by the district court.

In this case, no plain error occurred. No case in our circuit has applied *Franks* in this context. And any error in this case would be predicated on an expectation that the district court should have remembered what was in a warrant affidavit submitted two years earlier, realized that the testimony was inconsistent with that affidavit, and evaluated that inconsistency under a standard never before applied to a similar context. Under the circumstances, any error was not plain. As the district court did not commit plain error, Rusnak's argument fails under plain-error analysis.

## B

We turn now to Rusnak's claims of error regarding Stephanie's testimony. We reject each of Rusnak's claims either because they lack merit or do not constitute plain error.

### i

The parties' Agreement required them to disclose the identity of testifying witnesses. It provided that any undisclosed witness was potentially subject to exclusion at the discretion of the district court. Rusnak did not disclose Stephanie as a potential witness but called her at trial. Rusnak claims the district court unequally enforced the Agreement in violation of *Wardius v. Oregon*, 412 U.S. 470 (1973), by limiting Stephanie's testimony but allowing allegedly undisclosed testimony from Agent Campbell. We assume (but do not decide) that de novo review applies. *See Toquero v. I.N.S.*, 956 F.2d 193, 194–95 (9th Cir. 1992) (holding it was not necessary to decide which standard of review applied when the argument would fail under de novo review).

In *Wardius*, the defendant challenged an Oregon law barring defendants from introducing any alibi evidence unless the defendant, prior to trial, gave the Government notice of "where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence." 412 U.S. at 472 n.3 (citation omitted); *see id.* at 471–72. Because Wardius failed to comply with the notice requirement, the trial court excluded his alibi evidence, thereby preventing him from mounting an effective defense. *See id.* at 473. Wardius brought a facial challenge to the

statute, and the Supreme Court held "that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Id.* at 472.

We have generally limited *Wardius* to cases involving facial or as-applied challenges to discovery statutes or regulations that favor the prosecution. *See, e.g.*, *United States v. Bahamonde*, 445 F.3d 1225, 1228–30 (9th Cir. 2006) (applying *Wardius* to evaluate whether a Department of Homeland Security regulation unfairly favored the prosecution). But even assuming *Wardius* applies to a district court's evidentiary decisions—a question we do not decide—Rusnak would not prevail because he received the lion's share of the benefit from the district court's enforcement of the Agreement.

Rusnak concedes he failed to disclose Stephanie as a witness, explaining that he did not do so because Stephanie appeared on the Government's witness list. But the trial rules governing cross-examining an adverse witness and directly examining one's own witness are different as to both scope and mode. Nor is there any indication that the Agreement permitted a party to leave an individual off its list of potential affirmative witnesses because that name appeared on the opposing party's list.

Despite the Agreement's provision that an undisclosed witness could be excluded entirely from testifying, the district court allowed Stephanie to testify, subject to the limitation that she was "precluded from testifying as to any subject matter that was not previously disclosed" in the FD-302 reports. The district court also barred the Government from using the limitation offensively to argue that "there was no corroboration . . . that there were a lot of people at [Rusnak's] house." Allowing Stephanie to testify was

particularly generous to Rusnak given that the Government had already rested its case in chief, thereby foreclosing its ability to directly examine Stephanie. *See United States v. Aceves-Rosales*, 832 F.2d 1155, 1156–57 (9th Cir. 1987) (noting that disclosure of evidence by defendant *after* the government rested its case in chief supported the district court's decision to exclude that evidence).

Against this misconduct, Rusnak asks us to weigh his allegation that the district court allowed the Government to violate the Agreement by eliciting testimony from Agent Campbell that was not disclosed in the pretrial summary. But Agent Campbell's testimony was not outside the scope of the pretrial disclosure summary, which indicated he would "provide background and other information regarding . . . BitTorrent and c-cleaner." This disclosure foreshadowed his testimony describing the length of time it takes to find and download child pornography using BitTorrent. Similarly, the pretrial disclosure summary's discussion of "c-cleaner" foreshadowed Agent Campbell's testimony about child pornography collectors who use CCleaner to delete previously downloaded materials on their computers to avoid detection.

We conclude, therefore, that Rusnak, not the Government, benefited more from the district court's enforcement of the Agreement. This conclusion forecloses Rusnak's additional arguments that the district court abused its discretion by failing to weigh Rusnak's need for Stephanie's testimony prior to excluding it and that the district court erred by imposing a witness exclusion in violation of the Sixth Amendment. The district court honed a well-crafted and sensible course of action in the face of Rusnak's misconduct, which preserved his ability to mount an effective, though unsuccessful, defense.

**ii**

We next address Rusnak's claims that the district court erred by allowing the Government to admit, in the guise of speaking questions, Stephanie's hearsay statements to FBI Agents. Rusnak also contends that the speaking questions were outside the scope of cross-examination. Both claims relate to the following exchange between the Government and Stephanie:

> Q. When you talked to the [FBI] agents in October of '14 and then again in March of '16, you told them you didn't know of anyone who could have downloaded child pornography at the house, correct?
>
> A. Right.
>
> Q. And you told them that no one else stayed at the house?
>
> A. I might have said that. I don't recall.

We must determine as a threshold matter what standard of review applies to Rusnak's scope and hearsay claims. Rusnak did not contemporaneously object to the Government's questions. After additional unrelated questioning from the Government, Rusnak asked for a sidebar, at which he argued that the Government "open[ed] the door, and . . . le[ft] the wrong impression with the jury" that no one visited the Rusnaks' home. The district court disagreed that the Government's questions insinuated that no one else ever visited the home but allowed Rusnak to follow up during redirect about what Stephanie meant by "stay at

the house." Stephanie clarified that, when she said "staying at the house," she meant "nobody else lived at the home."

We conclude that Rusnak's objection was not based on hearsay or scope, but instead was predicated on the trial court's prior admonition to the Government not to use the discovery sanction it imposed on Rusnak offensively. "When a defendant does not object to the introduction of evidence at trial on the same grounds as raised on appeal, the district court will only be reversed for plain error." *United States v. McInnis*, 976 F.2d 1226, 1231 n.3 (9th Cir. 1992). Because Rusnak failed to object on scope or hearsay grounds, we review for plain error. *See United States v. Blandin*, 435 F.3d 1191, 1195 (9th Cir. 2006) (improper hearsay); *United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004) (improper scope). Accordingly, Rusnak bears the burden of demonstrating that the district court committed "(1) error; (2) that [wa]s plain; (3) that affect[ed] substantial rights; and (4) . . . seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pelisamen*, 641 F.3d 399, 404 (9th Cir. 2011) (citing *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

Looking first at Rusnak's scope argument, we conclude the district court committed error that was plain by allowing the Government's questions. Rusnak did not ask Stephanie about friends visiting their home during direct examination; thus, this topic was not "in dispute." *United States v. Green*, 648 F.2d 587, 595 (9th Cir. 1981). The Government argues Rusnak's opening statement and statements outside the presence of the jury put the subject in dispute, but "[a]n opening statement . . . cannot operate to place an issue in controversy." *Id.* And statements made outside the presence of the finder of fact are no different. The Government's questions on cross-examination were therefore outside the

scope of the direct examination, and the district court's decision to allow them was error that was plain.

Rusnak's hearsay argument has merit for similar reasons. The Government's questions introduced Stephanie's out-of-court statements to FBI Agents for their truth, violating the rule against hearsay. *See* Fed. R. Evid. 801(c), 802. Attorneys may not introduce hearsay statements "under the guise of cross-examin[ation]." *United States v. Sine*, 493 F.3d 1021, 1031 (9th Cir. 2007) (citation omitted). Nor were the statements properly offered for the non-hearsay purpose of impeaching Rusnak's third-party culpability defense. At the time the hearsay statements were offered, Rusnak had not introduced—his opening statement notwithstanding—evidence suggesting that the child pornography was accessed by visitors to his home. Thus, there was nothing to impeach. *Cf. Green*, 648 F.2d at 595. The district court committed error that was plain by allowing Stephanie's statements to the FBI Agents to come in under the guise of impeachment.

Our inquiry does not end here, however, because we conclude that the district court's errors did not affect Rusnak's substantial rights. For an error to affect a defendant's substantial rights, the "error must have substantial and injurious effect or influence in determining the . . . verdict." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (alteration in original) (internal quotation marks and citation omitted). The defendant must show there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* at 82 (alteration adopted) (citation omitted).

A "reasonable probability" is "less than a certainty, or even a likelihood," *United States v. Tapia*, 665 F.3d 1059, 1061 (9th Cir. 2011), and is a standard "a bit lower but not a

lot lower" than more-probable-than-not, *Mann v. Ryan*, 828 F.3d 1143, 1155 (9th Cir. 2016) (applying the standard to ineffective assistance of counsel). Rusnak does not meet this relatively low burden. The district court allowed Rusnak to redirect Stephanie to clarify her statements to the FBI Agents. And Rusnak, through his own testimony, fully presented his theory of the case—namely, that Chamberlain or one of the other people who frequently visited his home was responsible for accessing, downloading, and distributing the child pornography. The fact that Stephanie was precluded from giving a fulsome description of *why* she told the FBI Agents that no one else stayed at the house did not meaningfully prejudice Rusnak. As Rusnak himself told the district court, Stephanie's unabridged testimony would have merely "corroborate[d]" Rusnak's claim that there were "a lot of people at the house." *See United States v. Gomez*, 846 F.2d 557, 559 (9th Cir. 1988) (explaining that a district court "has considerable discretion to limit cross examination in order to prevent delay or avoid cumulative evidence").

Setting Stephanie's testimony to the side, the Government presented a strong case showing that Rusnak, rather than a third party, was responsible for accessing, possessing, and distributing the child pornography. *Cf. United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005) (holding the admission of unfairly prejudicial evidence was harmless error considering the strong case presented by the Government). Rusnak admitted that he personally downloaded CCleaner, software frequently used to hide evidence of child pornography. Evidence of child pornography was found on several computers owned by Rusnak, some in files located on a directory under his name. During the investigation, Rusnak repeatedly asserted he did not know how the child pornography ended up on his

computers.  Only when he got to trial did Rusnak assert that someone else was responsible for the child pornography. Overall, Rusnak has not shown a reasonable probability that "but for [the hearsay and scope of examination errors], the result of the proceeding would have been different." *Dominguez Benitez*, 542 U.S. at 82 (citation omitted).

### iii

Rusnak also claims that the Government's questions, combined with the limited redirect permitted by the district court, violated his Confrontation Clause right to confront Stephanie about her statements to the FBI Agents.  Because Rusnak's claim is for constitutional error, the Government bears the burden of proving that the asserted error "was harmless beyond a reasonable doubt."  *Chapman v. California*, 386 U.S. 18, 24 (1967); *United States v. Brooks*, 772 F.3d 1161, 1171 (9th Cir. 2014).  We conclude that no error occurred, thus ending the inquiry.

A violation of the Confrontation Clause occurs where a declarant's out-of-court testimonial statements are introduced and the defendant is denied the opportunity to expose the declarant's testimonial statement to the "crucible of" examination. *Crawford v. Washington*, 541 U.S. 36, 61 (2004).  Denying defendants the opportunity to redirect a witness regarding an improper testimonial statement introduced during cross-examination offends the Confrontation Clause. *Cf. United States v. Baker*, 10 F.3d 1374, 1404 (9th Cir. 1993) ("[W]here [a] new matter is elicited on redirect examination . . . denial of recross as to that new matter violates the Confrontation Clause."), *overruled on other grounds*, *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000).

We begin by dispensing with the Government's argument that because Rusnak called Stephanie as a witness, her testimony necessarily could not offend the Confrontation Clause. The Government does not point to any case barring the application of *Crawford* and its progeny to witnesses called by defendants. *Crawford* repeatedly discusses "[t]estimonial statements of witnesses," 541 U.S. at 59, without drawing the distinction the Government seeks. Accordingly, we reject the Government's argument, at least in situations where, as here, the defendant's witness is improperly cross-examined using questions incorporating out-of-court testimonial statements undermining the defendant's case. *Cf. Baker*, 10 F.3d at 1404.

We reject Rusnak's Confrontation Clause claim, however, for an independent reason: Rusnak was afforded the opportunity, albeit in a limited fashion, to redirect Stephanie. The cases upon which Rusnak relies for his Confrontation Clause challenge—*United States v. Vargas*, 933 F.2d 701, 705–06 (9th Cir. 1991), *United States v. Wilmore*, 381 F.3d 868, 871–73 (9th Cir. 2004), and *Baker*, 10 F.3d at 1404–06—are distinguishable because each involved the complete preclusion of questioning that should have been allowed as within the proper scope of examination. Here, by contrast, the Government's questions opened a narrow door: what Stephanie meant when she told the FBI Agents that no one "stayed in the house." The district court allowed Rusnak to redirect on that limited subject, at which point Stephanie clarified that when she used the word "stayed" she meant "[n]obody else lived at the house." The redirect permitted by the district court satisfied Rusnak's Confrontation Clause right.

**C**

Lastly, Rusnak argues the district court erred in denying his motion for a new trial because there was prosecutorial misconduct. During its rebuttal summation, the Government held up an exhibit showing the location of the desktop computer on October 2, 2014—the day of the FBI raid—and stated that Rusnak's friend "looked at child pornography, did whatever it is he was going to do while he was looking at the child pornography right here next to this crib." Rusnak objected, arguing that (1) the evidence only showed that the file on the desktop computer was "last modified" on August 30, 2013, and (2) there was no evidence the child pornography was accessed after December 2013, when the Rusnaks moved into the home in the photograph. Because the Government conceded it could not point to any evidence that the child pornography was *accessed* at some point after December 2013, the district court ordered the Government to "move on from that point" and issued the following curative instruction to the jury:

> I do want to remind the jurors, and you'll hear it again in the instructions, that the lawyers' statements aren't evidence. You'll be the one to determine what the evidence is based on your recollection of that evidence, and your recollection controls.

When a defendant objects to a prosecutor's conduct during trial, as Rusnak did here, we review for harmless error. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190 (9th Cir. 2015). Reversal is warranted "only if it appears more probable than not that prosecutorial misconduct materially affected the fairness of the trial." *Id.* (citation omitted).

We reject Rusnak's claim because the Government's summation, while toeing the line, was ultimately, as the district court held, a "fair comment on the state of the evidence." The desktop computer containing the image was located next to the child's crib in the exhibit. Though the Government properly conceded that the metadata did not reveal whether the file had been accessed in the years in which the desktop computer was next to the child's crib, its possible remaining presence on the computer after the Rusnaks moved into the home in December 2013 is a fair basis upon which the Government could argue that access occurred. *See Schulz v. Pa. R.R. Co.*, 350 U.S. 523, 526 (1956) (emphasis added and footnote omitted) ("Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or *proof of circumstances from which inferences can fairly be drawn*.").

Furthermore, the district court immediately cabined any unfair prejudice by instructing the Government to move on and issuing a curative instruction that the jurors' memory controlled. At the same time, the district court reiterated the instruction that lawyers' statements are not evidence and reminded jurors that *they* "[wi]ll be the one[s] to determine what the evidence is." The curative oral instruction, repeated in the written instruction, makes any error harmless. *See United States v. Lopez-Alvarez*, 970 F.2d 583, 598 (9th Cir. 1992) (holding that an oral admonitition that "the lawyers' statements are not evidence" was sufficient to neutralize any predjuce); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) ("There is a strong presumption that juries follow curative instructions."). The timely cautions to the jury were

sufficient. *Cf. United States v. Kerr*, 981 F.2d 1050, 1053–54 (9th Cir. 1992) (holding that an instruction that the jurors "are the sole judges of the credibility of the witnesses" was insufficient only because the prosecutor created a "crisis situation" by "portraying the government as the guarantor of the testimony's truthfulness").[2]

## D

We now turn to Rusnak's claims regarding the Conditions of Supervised Release, beginning with his claim that the district court's decision to impose a life term of supervised release was procedurally improper.  Rusnak makes two arguments supporting this claim.  First, he argues the district court failed to adequately explain why it varied downward with respect to the term of imprisonment imposed but did not do so for the term of supervised release.  Second, he claims the only reason for the disparity between his term of imprisonment and his supervised release term is that the district court inappropriately considered his decision to maintain his innocence.  Because the presentence report recommended a life term of supervised release and Rusnak urged the district court to adopt the "fair [and] accurate report," we review Rusnak's claim for plain error.  *United States v. Sandoval-Orellana*, 714 F.3d 1174, 1180 (9th Cir. 2013).

Both of Rusnak's arguments prove too much.  "A within-Guidelines sentence ordinarily needs little explanation

---

[2] For the foregoing reasons, we reject Rusnak's claim that cumulative error requires a new trial.  As discussed, the only errors committed by the district court related to its decision to allow inappropriate cross-examination questioning of Stephanie, incorporating her hearsay statements to FBI Agents.  That error did not affect Rusnak's substantial rights.

unless a party has requested a specific departure . . . ." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008). Here, Rusnak asked the district court to impose the lifetime term of supervised release recommended by the PSR. And Rusnak does not point to any case law holding that a district court plainly errs when it fails to exhaustively explain its decision to impose a shorter term of imprisonment followed by a longer term of supervised release. Furthermore, the district court fully considered the 18 U.S.C. § 3553(a) factors in determining the sentence. The district court's recitation of the § 3553(a) factors provided a number of reasons for the lifetime term of supervised release other than Rusnak's decision to maintain his innocence including, for example, the fact that he declined to answer some of the questions posed to him as part of the psychosexual evaluation. Overall, the district court did not err, let alone plainly err, in imposing a lifetime term of supervised release.

As to the substance of the Special Conditions, the Government concedes that remand is required to conform the written judgment to the oral pronouncement of Special Conditions 2, 3, 4, 5, 6, 7, and 8. *See United States v. Hernandez*, 795 F.3d 1159, 1169 (9th Cir. 2015). So conformed, the Government also concedes Special Conditions 5 and 8 must be vacated and remanded for the district court to reconsider.

The sole remaining dispute concerns the substance of Special Condition 7. The written judgment imposes the following condition:

> You shall submit your person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a

warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct, and by any probation officer in the lawful discharge of the officer's supervision functions. You shall consent to and cooperate with the seizure and removal of any hardware and/or data storage media for further analysis by law enforcement or the probation officer with reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct. You shall warn any other residents that the premises may be subject to searches pursuant to this condition.

Once Special Condition 7 is conformed to the oral pronouncement, however, it requires Rusnak "to submit your person and property to a search by your probation officer." Rusnak argues that the conformed version of Special Condition 7 "lacks the necessary reasonable suspicion requirement." But the Supreme Court in *Samson v. California*, 547 U.S. 843, 852–55, 857 (2006), held that a suspicionless search of a parolee did not necessarily violate the Fourth Amendment, and this court has upheld similar searches of federal probationers, *see United States v. King*, 736 F.3d 805, 806 (9th Cir. 2013). The district court's decision to impose just such a requirement here was not an abuse of discretion, let alone plain error. *See United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007). We note that the district court may, pursuant to 18 U.S.C. § 3583(e)(2), modify the condition imposed in its oral pronouncement to the version of the condition contained in the written judgment.

\* \* \* \*

We affirm Rusnak's criminal conviction. We remand Special Conditions 2, 3, 4, 6, and 7 to be conformed with the oral pronouncement. We vacate and remand Special Conditions 5 and 8 for the district court to reconsider.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**