**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

SYLVIA OLIVAS, AKA Sylvia Lee Gavaldon,

*Defendant-Appellant*.

No. 20-50182

D.C. No.
2:16-cr-00390-
DSF-AB-4

OPINION

On Remand from the United States Supreme Court

Argued and Submitted April 7, 2025
San Francisco, California

Filed August 25, 2025

Before: Andrew D. Hurwitz, Ryan D. Nelson, and Patrick J. Bumatay, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY[*]

## Criminal Law

On remand from the Supreme Court, the panel affirmed Sylvia Olivas's conspiracy convictions arising from her participation in activities of the Canta Ranas Organization, a violent street gang.

At Olivas's trial, a government expert testified that "secretaries"—trusted gang members who facilitate communication to and from incarcerated gang leaders—know "[e]verything" about the gang's activities. Later, the expert opined that Olivas was "a secretary."

Olivas argued on appeal that the testimony violated Federal Rule of Evidence 704(b), which prohibits expert witnesses in criminal cases from stating opinions "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." The panel rejected that argument and affirmed Olivas's convictions and sentence.

The Supreme Court remanded for further consideration in light of *Diaz v. United States*, 602 U.S. 526 (2024), which elaborated on when expert testimony violates Rule 704(b).

The panel concluded that the district court did not plainly err by admitting the expert's testimony that Olivas was a secretary for her brother, a Mexican Mafia member, after the expert said earlier that secretaries know "[e]verything" about the gang. The panel explained that *Diaz* underscores the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

narrow scope of testimony prohibited by Rule 704(b)—an expert opinion is "about" the ultimate issue of the defendant's mental state only if it includes a conclusion on that precise topic, not merely if it concerns or refers to that topic. The panel assumed, as Olivas argued, that the expert's challenged statements, when considered in the aggregate, fall afoul of *Diaz*. But, under the peculiar circumstances of this case in which the challenged statements came hours apart separated by exchanges on topics unrelated to secretaries, the panel could not say any error "should have been, but was not, recognized by the district court."

The panel concluded that Olivas is not entitled to relief under Federal Rule of Criminal Procedure 52(b) because even if the district court plainly erred, the error did not affect Olivas's substantial rights or impair the integrity of judicial proceedings.

The panel addressed other issues in a separately filed memorandum disposition.

## COUNSEL

Hava A.L. Mirell (argued), Jehan M. Pernas Kim, Lindsay M. Bailey, MiRi Song, and Chelsea Norell, Assistant United States Attorneys; Kathy Yu, Senior Litigation Counsel; Mack E. Jenkins and Bram M. Alden, Assistant United States Attorneys, Chiefs, Criminal Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Carlton F. Gunn (argued), Law Office of Carlton F. Gunn, Los Angeles, California, for Defendant-Appellant.

**OPINION**

R. NELSON, Circuit Judge:

During Sylvia Olivas's trial for conspiracy, a government expert testified that "secretaries"—trusted gang members who facilitate communication to and from incarcerated gang leaders—know "[e]verything" about the gang's activities. Later, the expert opined that Olivas was "a secretary." In a previous appeal, Olivas argued that the testimony violated Federal Rule of Evidence 704(b), which prohibits expert witnesses in criminal cases from stating opinions "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." We rejected that argument and affirmed Olivas's convictions and sentence. *See United States v. Olivas*, No. 20-50182, 2023 WL 4105308, at *2, *3 (9th Cir. June 21, 2023). The Supreme Court vacated our judgment and remanded for further consideration in light of its opinion in *Diaz v. United States*, which elaborated on when expert testimony violates Rule 704(b). 602 U.S. 526 (2024).

Reviewing for plain error, we find none. And, even assuming plain error, admission of the testimony did not affect Olivas's substantial rights. We affirm.

I

Sylvia Olivas was a member of the Canta Ranas Organization (CRO), a violent street gang in southern California that deals drugs and commits other crimes. *See United States v. Jaimez*, 45 F.4th 1118, 1122 (9th Cir. 2022). The CRO is linked to the Mexican Mafia, another criminal organization. *Id.* Olivas's brother, David Gavaldon, is a

Mexican Mafia member who led the CRO while serving a life sentence for murder.

Gavaldon controlled the CRO through "secretaries"—loyal gang members who conveyed his orders to "shotcallers" on the outside. Law enforcement learned that Olivas was her brother's secretary for several years. She visited Gavaldon in prison to discuss gang business, relayed his messages to gang members on the streets, and controlled the flow of CRO money on his behalf.

In 2017, a federal grand jury indicted Olivas and nearly 50 codefendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. The indictment alleged RICO conspiracy, money-laundering conspiracy, drug-trafficking conspiracy, and various substantive offenses. *See* 18 U.S.C. §§ 1962(d), 1956(h); 21 U.S.C. § 846.

At trial, the Government argued that Olivas was "a trusted secretary" to Gavaldon. To support its theory, the Government offered the expert testimony of Rene Enriquez, a former Mexican Mafia member.

On direct examination, Enriquez described secretaries as being "right under a Mexican Mafia member" in the gang's hierarchy. "There's no greater power" than being a secretary, Enriquez explained, because "[t]hat's the individual who communicates with the Mexican Mafia member," "controls the crew," and "controls the money." Simply said, "[w]ithout the secretary, there is no crew." After that colloquy, Enriquez testified about other gang members, such as the shotcallers. The court then adjourned for lunch.

The Government renewed its questioning in the afternoon. It picked up with Enriquez's discussion about shotcallers before addressing other topics, like how the gang smuggles drugs into prison. Sometime later, the exchange returned to secretaries. When asked how much "secretaries know about the activities of the crew," Enriquez replied, "Everything. Everything goes through them."

The questioning again shifted to other topics—for example, how gang members use code to communicate. Eventually, the Government played a video of Olivas visiting Gavaldon in prison. When asked what he learned from the video, Enriquez said that Olivas "was a secretary for her brother, Mexican Mafia member, David Gavaldon." There was no objection.

Later, the Government questioned Enriquez about a letter from Olivas telling Gavaldon that a woman thanked him for sending her money. Enriquez explained that "[s]he's expressing her appreciation to the Mexican Mafia member, David Gavaldon, through his secretary, Ms. Olivas." Again, no objection.

The direct examination continued. The Government asked Enriquez "whether David Gavaldon and Sylvia Olivas were passing messages regarding Mexican Mafia business." The defense objected, arguing that the question went to the "ultimate issue [in] the case." The district court overruled the objection.

Finally, after several hours of questioning, only a small portion of which involved secretaries, the Government again asked Enriquez if he had "an opinion regarding Sylvia Olivas's position in David Gavaldon's crew." As he had two times before, Enriquez stated, "She's a secretary for the

Mexican Mafia.  She's a secretary for David Gavaldon."  Yet again, no objection.

Olivas was convicted and sentenced to 151 months' imprisonment.  On appeal, Olivas argued that Enriquez's testimony violated Federal Rule of Evidence 704(b), which bars an expert in a criminal case from stating an opinion about whether the defendant had a mental state constituting an element of the charged offense.  *See United States v. Finley*, 301 F.3d 1000, 1015 (9th Cir. 2002).  As Olivas saw it, Enriquez's opinion that she was Gavaldon's secretary, combined with his earlier testimony that secretaries know "[e]verything" about the gang, compelled a conclusion about her mental state during the charged conspiracies, which require knowledge or intent related to the criminal scheme. *See, e.g.*, *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[C]onspiracy to violate RICO requires a showing that defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.'" (quotation omitted)).

Two years ago, we disagreed.  *See United States v. Olivas*, No. 20-50182, 2023 WL 4105308, at *2 (9th Cir. June 21, 2023).[1]   Our original decision reasoned that Enriquez never opined on Olivas's "'actual mental state during the charged offense'" or offered "'testimony which necessarily would imply that ultimate conclusion' in violation of Rule 704(b)."  *Id.* (quoting *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997) (en banc)).  At most, "Enriquez's testimony merely 'described'" a

---

[1] Judge Hurwitz and Judge R. Nelson decided the original appeal as a two-judge quorum.  *See* 28 U.S.C. § 46(d); 9th Cir. Gen. Ord. 3.2(h). Judge Bumatay was drawn as the third panel member after remand from the Supreme Court.

characteristic—knowledge of the gang's activities—that is "'a common practice of those who'" are secretaries to CRO leaders. *Id.* (quoting *United States v. Freeman*, 498 F.3d 893, 906–07 (9th Cir. 2007)). After addressing the remaining issues, we affirmed Olivas's convictions and sentence.[2] *Id.* at *1.

Meanwhile, another Ninth Circuit case involving Rule 704(b) was making its way to the Supreme Court. At issue in *United States v. Diaz* was expert testimony about the so-called "blind mule" defense. No. 21-50238, 2023 WL 314309, at *2 (9th Cir. Jan. 19, 2023). The defendant—who was caught driving across the southern border with 54 pounds of methamphetamine—claimed ignorance to the drugs hidden in her car. *See Diaz*, 602 U.S. at 528–29. On that telling, the defendant was not guilty of "knowingly" importing drugs into the United States. *See* 21 U.S.C. §§ 952, 960(a)(1). A government expert, however, testified that drug traffickers "rarely use unknowing couriers." *Diaz*, 2023 WL 314309, at *2. The defendant was convicted of importing methamphetamine, and argued on appeal that the expert's testimony violated Rule 704(b) because it was the "'functional equivalent' of a prohibited opinion on mental state." *Id.* The panel rejected that argument as "contrary to our precedent." *Id.* It relied on the same line of cases as the original decision here, concluding that the expert had "not provide[d] an 'explicit opinion' on the defendant's state of mind." *Id.* (quoting *United States v. Gomez*, 725 F.3d 1121, 1128 (9th Cir. 2013)).

---

[2] We also resolved the consolidated appeal for Olivas's codefendant, Michael Salinas. *See United States v. Salinas*, No. 21-50270 (9th Cir. June 21, 2023), Dkt. 61. His claims are not at issue here.

The Supreme Court granted certiorari in *Diaz* and set the case for argument. *Diaz v. United States*, 144 S. Ct. 392 (2023). Olivas also sought certiorari. After the Supreme Court issued its opinion in *Diaz*, *see* 602 U.S. 526 (2024), it granted Olivas's petition, vacated our judgment, and remanded "for further consideration in light of *Diaz*." *Olivas v. United States*, 144 S. Ct. 2711 (2024).

We must now decide anew whether it was reversible error to admit Enriquez's testimony. We have jurisdiction under 28 U.S.C. § 1291.[3]

## II

If the admission of expert testimony is objected to at trial, we review for abuse of discretion. *United States v. Johnson*, 875 F.3d 1265, 1280 (9th Cir. 2017). But when there is no objection, we review for plain error. *United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021).

The Government contends that plain error applies because Olivas failed to object to the challenged testimony at trial. We agree. Enriquez testified three times that Olivas was Gavaldon's secretary. Her lawyer never objected to that testimony. A party preserves an evidentiary issue for appeal "only if" it "timely objects" and "states the specific ground" for the objection, "unless it was apparent from the context." Fed. R. Evid. 103(a). Yet at no point during trial did the defense claim that any of Enriquez's testimony was improper mental state evidence under Rule 704(b), even though references to her being a secretary followed Enriquez's opinion that secretaries know "[e]verything" about the gang. *See United States v. Pino-Noriega*, 189 F.3d

---

[3] We address the other issues Olivas raised on appeal in a separately filed memorandum disposition.

1089, 1097 (9th Cir. 1999) ("[S]ince the defense did not raise the [specific] objection at trial, we review for plain error, even as to those statements to which some other objection was made.").

Olivas counters that her lawyer objected to earlier testimony that she was "passing messages [with Gavaldon] regarding Mexican Mafia business."  More is required.  A party must lodge a "specific objection" to the challenged testimony.  *United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990).  Put another way, a party must object to the precise testimony under review.  Objections to earlier, attenuated statements are not enough.  A party cannot claim to have properly objected to the testimony without having put the district court on notice of the specific ground raised on appeal.  *Cf. United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) ("[A] party fails to preserve an evidentiary issue for appeal . . . by making the *wrong* specific objection." (quoting *Gomez-Norena*, 908 F.2d at 500)).  Because the defense failed to specifically object to Enriquez's testimony that Olivas was a Mexican Mafia secretary, we review for plain error.[4]

Federal Rule of Criminal Procedure 52(b) allows some "forfeited" errors to be "reversible."  *United States v. Olano*, 507 U.S. 725, 732 (1993).  But a defendant seeking to invoke

---

[4] Olivas asserts that the Government waived its plain-error argument at the certiorari stage when it filed a two-page memorandum noting that "the Court's decision in *Diaz* may bear on the correct resolution of this case."  Not so.  While the Government may waive plain-error review, it did not do so in a memorandum that said nothing about the substance of Olivas's petition.  *See United States v. Murguia-Rodriguez*, 815 F.3d 566, 574–75 (9th Cir. 2016).  The Government simply asked the Court to hold Olivas's petition before disposing of it "as appropriate" under *Diaz*.

that Rule must meet the "heavy burden" of showing "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Hougen*, 76 F.4th 805, 810 (9th Cir. 2023) (quotations omitted). If those three requirements are met, we have "discretion to grant relief," but only if Olivas can show that the error "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 810–11 (emphasis omitted) (quoting *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc)); *see Olano*, 507 U.S. at 735 ("Rule 52(b) is permissive, not mandatory."). "Meeting all four prongs is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation omitted).

Plain error is judged at the time of appellate review. *Henderson v. United States*, 568 U.S. 266, 269 (2013). So we consider *Diaz*, even though it was decided after Olivas's trial.

## III

We conclude that the district court did not plainly err by admitting Enriquez's testimony that Olivas was Gavaldon's secretary after he said earlier that secretaries know "[e]verything" about the gang. And even if the district court plainly erred, we conclude that the error did not affect Olivas's substantial rights or impair the integrity of judicial proceedings.

## A

Generally, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Rule 704(b), however, carves out a "limited exception" to the default rule. *United States v. Campos*, 217 F.3d 707, 710–11 (9th Cir. 2000). "In a criminal case, an expert

witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). "Those matters are for the trier of fact alone." *Id.*

We have interpreted Rule 704(b) "much more narrowly than its text might indicate." *United States v. Hayat*, 710 F.3d 875, 901 (9th Cir. 2013). Chief among these limitations is that the Rule prohibits only "explicit" or "direct" opinions about a criminal defendant's mental state. *Gomez*, 725 F.3d at 1128 (quoting *United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001)); *Freeman*, 498 F.3d at 906.

The "direct opinion" doctrine traces back to *Morales*. Sitting en banc, we held that Rule 704(b) "exclude[s] only testimony as to a defendant's *actual mental state* during the charged offense or testimony which necessarily would imply that ultimate conclusion." 108 F.3d at 1038 (emphasis added). Five years later, in *United States v. Gonzales*, we upheld the admission of testimony in the face of a Rule 704(b) challenge because the expert "never directly and unequivocally testified to [the defendant's] mental state." 307 F.3d 906, 911 (9th Cir. 2002). *Hayat* said the same: The expert complied with Rule 704(b) because "he never commented directly on [the defendant's] mental state." 710 F.3d at 902. And in *Freeman*, we reasoned that the expert "offered no opinion as to whether [the defendant] possessed the requisite criminal intent . . . but instead described a common practice of those who do have such intent." 498 F.3d at 906–07.

Our court's decision in *Diaz* relied on these precedents. *See Diaz*, 2023 WL 314309, at *2 (the expert did not "provide an 'explicit opinion' on the defendant's state of

mind" (quoting *Gomez*, 725 F.3d at 1128)). In affirming that decision, the Supreme Court gave more guidance on how to apply Rule 704(b). *Diaz* involved testimony about whether drug couriers typically know they are carrying drugs. A government expert testified that "in most circumstances, the [courier] knows they are hired . . . to take the drugs from point A to point B." 602 U.S. at 530. The question, then, was whether the expert functionally opined that the defendant knowingly transported drugs—an element of the charged offense.

The Court began with a straightforward observation: "Rule 704(b) applies only to opinions about the defendant." *Id.* at 534. Because the expert testified about the knowledge of *most* drug couriers, he did not necessarily describe the defendant's mental state. *Id.* at 534–35. His testimony, the Court explained, left open the possibility that the defendant was one of the "less-numerous-but-still-existent couriers who unwittingly transport drugs." *Id.* at 536. Thus, the expert "did not state an opinion about whether [the defendant] herself had a particular mental state" in violation of Rule 704(b). *Id.* at 528.

The expert's testimony left room for the jury to make the ultimate inference that *the defendant* knowingly transported drugs. Some background helps make the point. The common-law "ultimate issue rule" barred witnesses from "stat[ing] their conclusions on" an issue that the factfinder must decide to resolve the case. *United States v. Spaulding*, 293 U.S. 498, 506 (1935). The logic of the rule was to "prevent[] witnesses from taking over the jury's role." *Diaz*, 602 U.S. at 532. "If a witness gave an opinion 'covering the very question which was to be settled by the jury,' some feared that the jury would be left with 'no other duty but that of recording the finding of [the] witnes[s].'" *Id.* (quoting

*Chi. & Alton R.R. Co. v. Springfield & Nw. R.R. Co.*, 67 Ill. 142, 145 (1873)).

Rule 704 generally abolished the ultimate issue rule. *Id.* at 533; *see* Fed. R. Evid. 704(a). But the exception in subsection (b) reflects the old concern that expert witnesses—with their considerable persuasive authority— should not be permitted to "substitute [their] judgment for the jury's" on a dispositive issue. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quotation omitted). Thus, in *Diaz*, the Supreme Court emphasized how the expert testimony still left the ultimate inference—whether the specific defendant had the requisite mental state—"to the jury's judgment." 602 U.S. at 536. "As a result, [the expert's] testimony did not violate Rule 704(b)." *Id.*

It follows that Rule 704(b) prohibits only a "narrow set of opinions." *Id.* at 534. One such opinion, *Diaz* suggests, is a statement about the mental state of *all* members of a given group, combined with an opinion that the defendant is a member of that group. *See id.* at 535 (the dissent "mistakenly conflates an opinion about *most* couriers with one about *all* couriers"). Put differently, if an expert testifies that all individuals in a group have a certain state of mind, and then places the defendant in that group, she may opine on the defendant's mental state. *Diaz* thus underscores the "narrow scope of testimony prohibited by Rule 704(b)." *Id.* at 537. An expert opinion "is 'about' the ultimate issue of the defendant's mental state only if it includes a conclusion on that precise topic, not merely if it concerns or refers to that topic." *Id.*

## B

Olivas seizes on *Diaz* to craft a syllogism. As the argument goes, Enriquez's testimony that secretaries know

"[e]verything" about the gang—combined with his statement that she was "a secretary"—functionally is an opinion that Olivas had the knowledge and intent to convict her of the charged conspiracies. She argues that Enriquez's testimony (unlike the expert testimony in *Diaz*) did not allow for a "less-numerous-but-still-existent" group of secretaries that do not have the requisite mental state. *See* 602 U.S. at 536. That is fatal, she says, because *Diaz* interprets Rule 704(b) to prohibit expert testimony that functionally opines on the defendant's state of mind.

We conclude, however, that the district court's admission of Enriquez's testimony was not plainly erroneous under *Diaz*. "Error is plain where it is 'clear and obvious.'" *United States v. Kilbride*, 584 F.3d 1240, 1255 (9th Cir. 2009) (quoting *United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004)). Said another way, an error is not plain if it is "subject to reasonable dispute." *Puckett*, 556 U.S. at 135 (citing *Olano*, 507 U.S. at 734). To satisfy plain error, there must be no question or ambiguity that a district court failed to correct a manifest error—one that any jurist would have recognized without an objection. *See United States v. Rusnak*, 981 F.3d 697, 705 (9th Cir. 2020). "Plain error applies to a trial error that should have been, but was not, recognized by the district court." *Id.*

We cannot say that the district court should have recognized this error. To start, Olivas splices snippets from Enriquez's day-long testimony to identify an alleged Rule 704(b) violation. She begins with statements made at the beginning of Enriquez's direct examination: "Without the secretary, there is no crew," and "[t]here's no greater power" than being a secretary because "[t]hat's the individual who communicates with the Mexican Mafia member," "controls the crew," and "controls the money." Then came a lunch

break. Once proceedings resumed, the Government asked Enriquez how much "secretaries know about the activities of the crew." He replied, "Everything. Everything goes through them." Only much later did Enriquez say that Olivas was "a secretary."

We assume, as Olivas argues, that the witness's challenged statements, when considered in the aggregate, fall afoul of *Diaz*. But, under the peculiar circumstances of this case we cannot say any error "should have been, but was not, recognized by the district court." *Id.* The challenged statements came hours apart separated by exchanges on topics unrelated to secretaries. *See supra*, at 5–6. We would not expect the district court to realize sua sponte that Enriquez's opinion that Olivas is a secretary—itself an unobjectionable opinion—was rendered improper because of a separate permissible opinion, made hours earlier, that secretaries know "[e]verything."

## C

Even if the district court should have recognized this error, Olivas must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (quotation omitted); *see also United States v. Atkinson*, 297 U.S. 157, 160 (1936) (relief is limited to "exceptional circumstances"). She has not met that burden.

First, given the nature of Enriquez's testimony, it is hard to say that the jury understood Enriquez as "necessarily" implying that Olivas knew everything about the gang's activities. *Morales*, 108 F.3d at 1038; *see Diaz*, 602 U.S. at 534. It is not apparent that the jury—in learning that secretaries know "[e]verything" and then, much later, hearing that Enriquez believed Olivas was "a secretary"—

would draw the ultimate inference that Olivas herself knew everything about the gang's activities. *See Kilbride*, 584 F.3d at 1255. Had Enriquez testified in short order that *all* Mexican Mafia secretaries know everything about the gang, and that Olivas was a secretary, Olivas would have a stronger argument that she was prejudiced by Enriquez having "substitute[d] [his] judgment for the jury's" by compelling the conclusion that Olivas, as a Mexican Mafia secretary, knew about the gang's activities—an element of the charged conspiracies. *See Diaz*, 876 F.3d at 1197. But here, it is doubtful that the jury ever made that connection.

Consider too the ambiguities in Enriquez's testimony. Enriquez testified that secretaries know everything about the gang's activities. But he did not make it explicit whether, in his opinion, all or some lesser proportion of secretaries know everything. Immediately after saying that secretaries know "[e]verything," Enriquez clarified that otherwise "[i]t would be akin to being the CFO of a corporation and not knowing any of its function[s]." That is why "the secretary necessarily has to be involved in the micromanagement and minutiae of the crew *on a regular basis*," he continued. At other points when discussing the roles of secretaries, Enriquez used qualifying language, such as "[c]ommonly," "[u]sually," and "typically." The jury might have inferred the same qualification applied to Enriquez's opinion that secretaries know "[e]verything." In short, given the ambiguities in the testimony, any prejudice to Olivas from this testimony is speculative at best.

Second, even putting aside Enriquez's testimony, the Government "presented strong independent evidence of [Olivas's] guilt." *United States v. Moreland*, 622 F.3d 1147, 1162 (9th Cir. 2010) (quotation omitted). Her text messages, for example, revealed mastery of informal gang code. When

other CRO members too obviously discussed illegal activity, Olivas corrected them.  Olivas also knew that she might be under surveillance.  When talking to a CRO member who, unbeknownst to her, was wearing a wire, Olivas said: (1) "[M]y phones are tapped.  Just remember that"; (2) "People talk.  People blab . . . that's how the police find stuff out"; and (3) "[P]eople start throwing names out there. You never know when . . . you're going to be talking to an informant."

The jury also learned that Olivas met with Gavaldon in prison before transmitting his messages to gang members on the streets.  During a prison visit, Olivas and Gavaldon discussed "Bryan," the code name for Armando Holguin, a CRO shotcaller.  Gavaldon expressed his displeasure with Holguin's leadership, instructing Olivas to tell Holguin that "he cannot be harsh" with his crew.  Olivas responded, "I'll tell him."

Olivas also controlled the flow of CRO money on Gavaldon's behalf.  Gavaldon had the power to "tax," or extort money, in the Mexican Mafia's name.  When Gavaldon learned that a CRO member was triple taxing— "she was going to three different people" and "accumulating . . . a couple thousand dollars"—he told Olivas that he "put a stop to it."  During another prison visit, Olivas confirmed to Gavaldon that the crew sent her money for gang-related purposes.  She also explained how she sent money to Gavaldon's chosen beneficiaries.  This is compelling evidence of Olivas's knowledge of and participation in the charged conspiracies.

Olivas counters that her interactions with Gavaldon "were easily explained by the fact he was her brother."  In her view, Enriquez's testimony that secretaries know

"[e]verything" and that Olivas was "a secretary" was so damning that it "drove a nail—indeed, multiple nails—into [her] coffin."    This argument ignores the body of incriminating evidence—consisting of Olivas's own calls, jail visits, and text messages—that has nothing to do with Enriquez's opinion that Olivas was Gavaldon's secretary. Against that evidence, it defies reality to say that a few statements in a roughly two-week trial were so prejudicial as to negate the entire defense theory.  This is not one of the rare times where a forfeited error "seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018) (quotation omitted).

IV

Under *Diaz*, the district court did not plainly err in admitting Enriquez's testimony despite Rule 704(b).  And even if it did, the error does not affect Olivas's substantial rights.  So Olivas is not entitled to relief under Rule 52(b).

**AFFIRMED.**